**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**James Anthony ELIA, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 20, 2013.

Filed Dec. 24, 2013.

Francis M. Walsh, Norristown, for appellant.

Adrienne D. Jappe, Assistant District Attorney, Norristown, for Commonwealth, appellee.

BEFORE: SHOGAN, J., WECHT, J., and COLVILLE, J.[*]

OPINION BY WECHT, J.:

James Elia ("Elia") appeals from his April 25, 2012 judgment of sentence. Elia raises two issues of first impression for this Court, as well as a challenge to the sufficiency of the evidence. After detailed review, we affirm.

Following allegations that he engaged in sexual conduct with a fourteen year-old-girl, Elia was charged with five counts of involuntary deviate sexual intercourse ("IDSI") with a child under the age of sixteen, five counts of statutory sexual assault, five counts of aggravated indecent assault of a child under the age of sixteen, one count of corruption of the morals of a minor, five counts of indecent assault of a child under the age of sixteen, and one count of unlawful contact or communication with a minor.[1] On June 27, 2011, pursuant to a negotiated plea agreement with the Commonwealth, Elia pleaded guilty to one count of IDSI and one count of statutory sexual assault. In exchange for Elia's plea, the Commonwealth withdrew the remaining charges and did not exercise its right to pursue the mandatory minimum ten-year prison term pursuant to 42 Pa.C.S. § 9718(a), which applies to the IDSI count to which Elia pleaded. Sentencing was scheduled for a later date so that Elia could be evaluated to determine whether he was a sexually violent predator pursuant to Megan's Law. *See generally* 42 Pa.C.S. § 9799.24.

On September 26, 2011, Elia filed a *pro se* motion to withdraw his guilty plea. Elia alleged, *inter alia*, that plea counsel was ineffective. In a separate motion, Elia also requested that new counsel be appointed to represent him. On October 13, 2011, the trial court held a hearing on Elia's motion, at which Elia was represented by the same plea counsel whose effectiveness Elia challenged in his motion. At the conclusion of the hearing, the court determined that Elia had presented a fair and just reason to withdraw his plea, namely an assertion of actual innocence, and that Elia was withdrawing his plea knowingly, voluntarily, and intelligently. The trial court did not specifically find that a conflict of interest existed between Elia and plea counsel, or that any animus between the two was sufficient to justify removing plea counsel from the case. Thus, the court denied Elia's request for a substitution of appointed counsel. However, plea counsel subsequently filed a motion to withdraw as counsel, wherein counsel asserted that a conflict of interest had arisen that necessitated the appointment of new counsel. Following a hearing, the trial court granted counsel's motion and appointed Attorney Francis P. Walsh, Esq. ("Attorney Walsh"), to represent Elia at trial.

On January 17, 2012, Elia appeared for trial with Attorney Walsh. Before trial

---

[*] Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S. §§ 3123(a)(7), 3122.1, 3125(a)(8), 6301(a)(1), 3126(a)(8), and 6318(a)(1), respectively.

could commence, Attorney Walsh presented an oral motion to the court seeking to withdraw Elia's withdrawal of his guilty plea. Attorney Walsh contended that Elia should not have been permitted to withdraw his plea because he did not expressly assert his innocence. Additionally, Attorney Walsh argued that the plea withdrawal hearing should never have occurred, at least without the appointment of new counsel, because Elia had alleged that plea counsel was ineffective in his motion to withdraw the plea. The trial court denied the motion.

Before trial began, the Commonwealth notified the trial court that it was pursuing only one count of each of the charges listed above. A non-jury trial commenced immediately thereafter. At that trial, the following facts were presented to the court.

In the summer of 2010, K.P–F. ("victim"), then fourteen, met Elia, who was then twenty-five years-old, at a local baseball field in Montgomery County, Pennsylvania. At the time, Elia was dating the victim's aunt. During their initial interactions, both the victim and the victim's aunt informed Elia that the victim was fourteen years old. As time passed, the relationship between Elia and the victim evolved from in-person conversations at the baseball field to electronic communication via Facebook and text messaging.

At some point during that summer, the victim's mother learned that the victim and Elia were communicating with one another. The victim's mother attempted to prohibit the victim from any further contact with Elia. However, on September 24, 2010, Elia picked the victim up from school and drove her to the baseball field in his mother's minivan. Initially, they sat on the bleachers and talked. They then returned to the minivan and got into the backseat. There, they engaged in sexual intercourse.

In another encounter sometime during September or October 2010, the victim performed oral sex on Elia. Elia also inserted his fingers into the victim's vagina, and touched the victim's breasts and buttocks with his hands. Shortly thereafter, the victim's mother learned of the sexual relationship and took the victim to a doctor, where the victim was diagnosed as having contracted a sexually transmitted disease.

On November 17, 2010, the Pennsylvania State Police intercepted a telephone conversation between Elia and the victim's mother, who consented to the interception. During the conversation, Elia stated that his relationship with the victim had been going on for approximately six months. Elia admitted that he was twenty-five years-old, and that he knew that the victim was fourteen years-old. However, Elia claimed that the victim's age did not prevent him from developing feelings for her. Elia admitted that he had engaged in unprotected sexual intercourse with the victim.

On November 18, 2010, after being arrested, Elia was interviewed by Pennsylvania State Trooper John Becker. Elia waived his constitutional right to remain silent and to have counsel present, and agreed to answer Trooper Becker's questions. During the interview, Elia confessed to engaging in oral sex with the victim, whom he knew to be fourteen years-old. Elia admitted that he performed oral sex on the victim, and that she performed oral sex and manual stimulation on him in return. Elia further admitted to touching the victim's breasts, vagina, and buttocks. Elia denied that he had ever engaged in vaginal intercourse with the victim. Elia also informed Trooper Becker that he possessed nude pictures of the victim on his phone, which he shared with three other people. Elia insisted that the relationship

was consensual in both its platonic and sexual aspects, and that in no way was the relationship forced upon the victim.

At the conclusion of the non-jury trial, the trial court found Elia guilty of IDSI, statutory sexual assault, aggravated indecent assault, corruption of minors, indecent assault, and unlawful contact with a minor. On March 19, 2012, the Commonwealth filed a notice of its intent to pursue the ten-year mandatory minimum sentence applicable to Elia's IDSI conviction pursuant to 42 Pa.C.S. § 9718(a).

On April 25, 2012, the parties appeared for sentencing.[2] Before sentence was imposed, Attorney Walsh argued that the application of subsection 9718(a) in this case constituted an unconstitutionally cruel and unusual punishment.[3] Specifically, Attorney Walsh argued that the imposition of a mandatory ten-year prison term for IDSI was grossly disproportionate to the conduct that formed the basis for the crime, which in this case was voluntary oral sex. Attorney Walsh further highlighted the disproportionality of the application of the provision to Elia's IDSI conviction by comparing it to Elia's statutory sexual assault conviction, which was predicated on vaginal intercourse, conduct that Attorney Walsh maintained was more severe than the oral sex that triggered the application of the mandatory sentence. The trial court rejected this argument and held that the mandatory minimum sentence was constitutional, and applicable to Elia.

The trial court sentenced Elia to ten to twenty years' incarceration pursuant to 42 Pa.C.S. § 9718(a) on the IDSI count. The court imposed no further penalty on the corruption of minors and unlawful contact with a child counts. The trial court determined that each of the remaining counts merged with other counts for sentencing purposes. Additionally, the trial court informed Elia that he must comply with the requirements of Megan's Law for the remainder of his lifetime.

On May 4, 2012, Elia filed post-sentence motions, wherein he alleged that: (1) the trial court erred in denying his request to withdraw his withdrawal of his guilty plea; (2) his plea counsel was ineffective; (3) the evidence was insufficient to prove him guilty of IDSI beyond a reasonable doubt; and (4) subsection 9718(a) was unconstitutional. On May 17, 2012, the trial court denied Elia's post-sentence motions.

On May 25, 2012, Elia filed a timely notice of appeal. In response, the trial court directed Elia to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Elia timely complied. On July 18, 2012, the trial court filed an opinion pursuant to Pa. R.A.P. 1925(a).

Elia raises the following issues for our review:

I. Did the trial court err in allowing [Elia] to withdraw his guilty plea where the court made a finding that [Elia] was asserting that he was not guilty of the charges despite the fact that [Elia] never testified that he was not guilty?

2. After his initial guilty plea, Elia was evaluated to determine whether he was a sexually violent predator pursuant to Megan's Law. Elia was not determined to be a sexually violent predator. Based upon this finding, the Commonwealth did not pursue such a determination at sentencing.

3. Attorney Walsh originally raised the constitutional challenge to subsection 9718(a)'s mandatory minimum sentence in a pre-trial motion. Disposition of that motion was deferred until sentencing, when such an argument became ripe for consideration.

II. Did the Commonwealth fail to prove beyond a reasonable doubt that [Elia] committed the crime of involuntary deviate sexual intercourse in the County of Montgomery?

III. Was the sentence of ten (10) to twenty (20) years['] incarceration for involuntary deviate sexual intercourse as a result of imposing a mandatory minimum ten (10) year sentence pursuant to 42 Pa.C.S.A. § 9718(a)(1) illegal because the mandatory minimum sentence provision is unconstitutional in violation of Article 1, Section 13 of the Pennsylvania Constitution due to the fact that it is cruel punishment?

Brief for Appellant at 3.

In his first issue, Elia presents an issue heretofore not addressed by this Court, or by any other appellate court in this Commonwealth: Elia asks us to determine whether the trial court erred in denying his motion to withdraw his motion to withdraw his guilty plea. As set forth above, Elia originally pleaded guilty to one count of IDSI and one count of statutory sexual assault. Elia filed a *pro se* motion to withdraw that plea and a motion for the appointment of new counsel. Following a hearing, the trial court denied the motion for new counsel, but granted Elia's request to withdraw his guilty plea. After the hearing, Elia's counsel petitioned to withdraw as counsel from the case, which the trial court granted. Attorney Walsh was then appointed to represent Elia. Before trial, Attorney Walsh presented a motion to withdraw Elia's previous withdrawal of his guilty plea, seeking the reinstatement of the terms of the initial plea. The trial court denied that motion.

Elia now argues that the trial court should have granted his motion to withdraw his motion to withdraw his guilty plea, for two reasons. First, Elia contends that, because he raised a claim of ineffective assistance of counsel in his *pro se* motion to withdraw his guilty plea, a conflict of interest arose between him and plea counsel. Consequently, the trial court should not have conducted the hearing to withdraw Elia's plea while plea counsel remained Elia's counsel. Second, Elia maintains that he did not actually assert his innocence and, therefore, the trial court erred in determining that Elia presented a fair and just reason to permit Elia to withdraw his plea.

 Our first task is to determine the proper legal principles that apply to this case, which undoubtedly arrives in this Court by way of a unique procedural trajectory. Indeed, Elia is arguing that the trial court erred in denying his request to reverse an order that granted him the specific relief that he initially requested. Despite these unusual circumstances, Elia's overarching claim boils down to a challenge to the trial court's decision regarding his original motion to withdraw a guilty plea. Accordingly, we will apply the traditional principles that govern presentence motions to withdraw guilty pleas.

 The standard of review that we employ in challenges to a trial court's decision regarding a presentence motion to withdraw a guilty plea is well-settled. "A trial court's decision regarding whether to permit a guilty plea to be withdrawn should not be upset absent an abuse of discretion. An abuse of discretion exists when a defendant shows any 'fair and just' reasons for withdrawing his plea absent 'substantial prejudice' to the Commonwealth." *Commonwealth v. Pardo*, 35 A.3d 1222, 1227 (Pa.Super.2011) (quoting *Commonwealth v. Prysock*, 972 A.2d 539, 541 (Pa.Super.2009); citing *Commonwealth v. Anthony*, 504 Pa. 551, 475 A.2d

1303, 1308 (1984)). In its discretion, a trial court may grant a motion for the withdrawal of a guilty plea at any time before the imposition of sentence. Pa.R.Crim.P. 591(A). "Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made before sentencing ... should be liberally allowed." *Commonwealth v. Forbes*, 450 Pa. 185, 299 A.2d 268, 271 (1973). The policy underlying this liberal exercise of discretion is well-established: "The trial courts in exercising their discretion must recognize that 'before judgment, the courts should show solicitude for a defendant who wishes to undo a waiver of all constitutional rights that surround the right to trial—perhaps the most devastating waiver possible under our constitution.'" *Commonwealth v. Santos*, 450 Pa. 492, 301 A.2d 829, 830 (1973) (quoting *Commonwealth v. Neely*, 449 Pa. 3, 295 A.2d 75, 76 (1972)). In *Forbes*, our Supreme Court instructed that, "in determining whether to grant a presentence motion for withdrawal of a guilty plea, 'the test to be applied by the trial courts is fairness and justice.'" *Forbes*, 299 A.2d at 271 (quoting *United States v. Stayton*, 408 F.2d 559, 561 (3d Cir.1969)).

■ With these basic principles in mind, we turn to Elia's claims. As noted, Elia first argues that, in light of his assertion that plea counsel was ineffective, the trial court should not have conducted the plea withdrawal hearing with plea counsel continuing to represent Elia. At the plea withdrawal hearing, Elia stated the following in support of his claim that plea counsel was ineffective:

I just feel that I'm basically representing myself. I mean, I've been incarcerated for 11 months and I just now got my discovery. And I understand what you were saying before, like it's almost as if I don't deserve that from my guilty plea, but I think I have a right to look into my case. It's my life. I just don't feel like I should, I mean, lay down.

I just don't feel like he's representing me right. I feel like I'm being bullied into things. When he comes to talk to me, it's not how are you doing, this and that. It's more like, well, what's your defense, what's this, instead of sitting down looking at me. I didn't even know I was supposed to have court today. I didn't know I was supposed to get sentenced today.

Notes of Testimony ("N.T."), 10/13/2011, at 7–8. Elia contends that this statement, along with the boilerplate ineffectiveness claim set forth in his *pro se* motion to withdraw his guilty plea, created a conflict of interest between himself and plea counsel such that the trial court abused its discretion by conducting the hearing under these circumstances. We need not consider the relative merits of Elia's first claim. He has waived this specific argument.

In his Rule 1925(b) statement, Elia stated only the following pertaining to his motion to withdraw his motion to withdraw his guilty plea:

Did the trial court erred [*sic*] in allowing the defendant to withdraw his guilty plea where the court made a finding that the defendant was asserting that he was not guilty of the charges despite the fact that the defendant never testified that he was not guilty?

Concise Statement of Matters Complained of on Appeal, 6/18/2012, at 1 ¶ 1. In his Rule 1925(b) statement, Elia focused his claim solely upon the trial court's determination that Elia sought to withdraw his plea based upon a claim of actual innocence, and never raised the issue of whether the hearing should have gone forward at all due to the purported conflict of interest between himself and plea counsel.

Rule 1925(b)(4) provides, in pertinent part, as follows:

> The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge.

Pa.R.A.P. 1925(b)(4)(ii). Pursuant to Rule 1925(b)(4)(vii), "Issues not included in the Statement and/or not raised in accordance with [Rule 1925(b)(4)] are waived." As our Supreme Court recently reiterated:

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements.

*Commonwealth v. Hill*, 609 Pa. 410, 16 A.3d 484, 494 (2011). Consequently, we must conclude that Elia's claim that the trial court abused its discretion for holding the withdrawal hearing is waived.

Elia next argues that the trial court abused its discretion when it found that he asserted his actual innocence and, thus, raised a "fair and just" reason to justify permitting him to withdraw his guilty plea. Elia maintains that he never asserted his innocence. Rather, it was plea counsel who stated to the trial court that "he contends he's not guilty, Your Honor." N.T., 10/13/2011, at 24.

■ It is well-settled that "an assertion of innocence may constitute a fair and just reason for the pre-sentence withdrawal of a guilty plea." *Commonwealth v. Miller*, 432 Pa.Super. 619, 639 A.2d 815, 816–17 (1994); *see Commonwealth v. Carrasquillo*, 2013 PA Super 270, 78 A.3d 1120, 1125 (Pa.Super.2013) (*en banc*). At the plea withdrawal hearing, while testifying as to why he wanted to withdraw his guilty plea, Elia stated that

> I feel that there's—like not all of the evidence is there. I feel there's a right to fight some of the evidence that they're putting against me. I already said ineffective assistance of counsel because I feel that we just have—we bang heads a lot, conflict of interest.
>
> * * *
>
> I mean just the tension. I don't feel comfortable at all. And I don't know if that even matters because I don't know the law like I should, but I just—I'm—I don't know how to say this. It doesn't even matter really, but, yeah, I don't feel like there's enough evidence in my case. I don't feel there's enough evidence against me. I want to fight some of the points on the evidence.

N.T., 10/13/2011 at 22–23. The trial court then asked Elia: "Do you contend you're not guilty, because that's an element of whether I grant you—?" In response, Elia stated: "That's a great question." *Id.* at 23–24. The trial court then suggests that Elia consult with plea counsel about how to answer that question. However, before such a consultation could occur, plea counsel stated: "He contends he's not guilty, Your Honor. May we approach?" *Id.* at 24.

■ Based upon this sequence of statements, we agree with Elia that, at a minimum, it is not clear that Elia asserted his actual innocence of the charges. However, our agreement in this regard does not automatically entitle Elia to relief. While an assertion of actual innocence constitutes a fair and just reason to permit a defendant to withdraw his plea, it is not the

only fair and just reason that would warrant a trial court to permit a defendant to withdraw a guilty plea.

■ Although Elia never uttered the words, "I am innocent," he nonetheless offered multiple other reasons that we conclude constituted fair and just reasons for withdrawing his plea. First, Elia stated that he felt as if plea counsel had "bullied" him into taking the plea. N.T., 10/13/2011, at 7–8. In essence, Elia was challenging the voluntariness of his plea based upon the alleged impropriety of plea counsel's stewardship. Second, Elia clearly believed that the evidence was insufficient to convict him of the crimes to which he pleaded guilty. *Id.* at 22–23 ("I don't feel like there's enough evidence in my case. I don't feel there's enough evidence against me."). Finally, Elia's statements evinced his inclination to challenge the Commonwealth's evidence at trial. *Id.* at 23 ("I want to fight some of the points on the evidence."). Thus, although Elia never unequivocally declared his innocence, he did present multiple reasons in support of his desire to withdraw his plea. *See Pardo, supra.* These reasons, when viewed according to the liberal standards set forth above, constitute fair and just reasons to permit Elia to withdraw his plea. This is particularly true in light of the fact that the Commonwealth did not offer any evidence whatsoever regarding any potential prejudice that might befall it if Elia was permitted to withdraw his plea. N.T., 10/23/2011, at 28.

■ We recognize that the trial court focused almost exclusively upon Elia's purported assertion of his innocence in the court's Rule 1925(a) opinion. However, we note the well-established principle that an appellate court may affirm a valid judgment based upon any reason appearing in the record. *Commonwealth v. Moore,* 594 Pa. 619, 937 A.2d 1062, 1073 (2007) (citing *Commonwealth v. Parker,* 591 Pa. 526, 919 A.2d 943, 948 (2007)). "The precept may be applied even though the reason for sustaining the judgment was not raised in the trial court, relied on by that court in reaching its decision, or brought to the attention of the appellate courts." Thomas G. Saylor, *Right for Any Reason: An Unsettled Doctrine at the Supreme Court Level and an Anecdotal Experience with Former Chief Justice Cappy,* 47 Duq. L.Rev. 489, 490 (2009). Thus, based upon the record, we conclude that Elia set forth fair and just reasons in support of his request to withdraw his guilty plea. Therefore, the trial court did not abuse its discretion either in granting Elia's motion to withdraw his plea or in denying Elia's motion to withdraw his withdrawal of his guilty plea.

■ In his second issue, Elia purports to challenge the sufficiency of the evidence offered in support of his IDSI conviction. However, Elia appears to conflate a challenge to the sufficiency of the evidence with a challenge to the trial court's subject matter jurisdiction. Elia does not direct his challenge toward any specific element of IDSI. Rather, Elia insists only that the Commonwealth failed to prove beyond a reasonable doubt that the conduct underlying the IDSI conviction occurred in Montgomery County. Accordingly, we will consider Elia's challenge as one directed towards the trial court's subject matter jurisdiction.[4]

---

4. In his Rule 1925(b) statement, Elia did not frame his issue as a challenge to the trial court's subject matter jurisdiction. However, it is axiomatic under Pennsylvania law that challenges to subject matter jurisdiction are non-waivable. *See Commonwealth v. Jones,* 593 Pa. 295, 929 A.2d 205, 208 (2007).

Recently, in *Commonwealth v. Seiders,* 11 A.3d 495 (Pa.Super.2010), we set forth the following governing standards pertaining to a trial court's subject matter jurisdiction in a criminal case:

> Subject matter jurisdiction speaks to the competency of a court to hear and adjudicate the type of controversy presented. *Commonwealth v. Bethea,* 574 Pa. 100, 828 A.2d 1066, 1074 (2003). Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. John,* 854 A.2d 591, 593 (Pa.Super.2004).... Controversies stemming from violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution. *Bethea,* 828 A.2d at 1074; 18 Pa.C.S. § 102. All jurists within that tier of the unified judicial system are competent to hear and resolve a matter arising out of the Crimes Code. *Bethea,* 828 A.2d at 1074; Pa. Const. Art. 5, § 5 (establishing the jurisdiction of the courts of common pleas within the unified judicial system); 42 Pa.C.S. § 931(a)(defining the unlimited original jurisdiction of the courts of common pleas).
>
> While each court of common pleas in this state possesses the same subject matter jurisdiction to decide cases arising under the Crimes Code, that "jurisdiction should only be exercised beyond the territorial boundaries of the judicial district in which it sits in the most limited of circumstances." *Bethea,* 828 A.2d at 1074.
>
> > The law is clear that the locus of a crime is always in issue, for the court has no jurisdiction [over] the offense unless it occurred within the county of trial, or unless, by some statute, it need not[.] For a county to take jurisdiction over a criminal case, some overt act involved in that crime must have occurred within that county. In order to base jurisdiction on an overt act, the act must have been essential to the crime, an act which is merely incidental to the crime is not sufficient.
> >
> > *Commonwealth v. Boyle,* 516 Pa. 105, 532 A.2d 306, 309–10 (1987).

*Seiders,* 11 A.3d at 496–97 (footnote omitted; some citations modified).

Elia was convicted of IDSI with a child under the age of sixteen. Subsection 3123(a)(7) of the Crimes Code provides that a person is guilty of this crime "when the person engages in deviate sexual intercourse with a complainant ..., who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other." 18 Pa.C.S. § 3123(a)(7). "Deviate sexual intercourse" is defined as "[s]exual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S. § 3101.

As noted above, Elia does not argue that the Commonwealth failed to establish any of these elements. Instead, Elia maintains that the evidence presented at trial did not establish that the crime was committed in Montgomery County, the county in which he was tried and convicted. Upon review of the evidence presented at trial, we disagree.

The victim testified that their sexual relationship began when he picked her up from school and took her to a baseball field located in Pennsburg, Pennsylvania. Elia stipulated at trial that Pennsburg was located in Montgomery County. The victim

testified that, during that first encounter at the baseball field, she and Elia engaged in sexual intercourse in the back of Elia's mother's minivan. Unquestionably, this sequence of events occurred in Montgomery County. The sexual intercourse that occurred during this encounter was not the basis for Elia's IDSI charge and conviction, because IDSI requires proof of "deviate sexual intercourse." 18 Pa.C.S. §§ 3123; 3101. However, the victim testified that, at some point during September or October of that year, she performed oral sex on Elia, conduct which clearly fulfills the elements of IDSI. We agree with Elia that the victim did not establish in her testimony the county where this conduct occurred. Nonetheless, her testimony established that the corpus of the crime had been committed.

In his confession to the police, Elia admitted that oral sex had occurred between him and the victim. Further, Elia confessed that the conduct occurred during the month of October, corroborating the victim's version of events. Fatal to Elia's claim, Elia also stated that the oral sex occurred in his mother's minivan at the baseball field. As previously stated, Elia stipulated at trial that the field was in Montgomery County.

▉ Elia was convicted of IDSI. The conduct which formed the basis of that crime occurred in Montgomery County. Hence, Elia's challenge to the trial court's subject matter jurisdiction fails.[5]

In his final issue, Elia contends that the ten-year mandatory minimum sentence pursuant to 42 Pa.C.S. § 9718(a) consti-

tutes an unconstitutionally cruel punishment in violation of Article 1, Section 13 of the Pennsylvania Constitution. Specifically, Elia maintains that the application of the mandatory minimum under the circumstances of this case resulted in a sentence that is grossly disproportionate to his convicted conduct.

▉ While we have ruled upon the constitutionality of other statutes that prescribe mandatory minimum sentences, *see e.g. Commonwealth v. Ehrsam,* 355 Pa.Super. 40, 512 A.2d 1199, 1210 (1986) (upholding the constitutionality of 42 Pa.C.S. § 9712, which requires the imposition of a five-year mandatory minimum sentence to offenders who visibly display a firearm during the commission of certain felonies), Elia's challenge to the constitutionality of 42 Pa.C.S. § 9718(a) is an issue of first impression for this Court. The constitutionality of a statute is a pure question of law; our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Omar,* 602 Pa. 595, 981 A.2d 179, 185 (2009). In examining the constitutionality of a statute, we bear in mind the following legal precepts:

The Pennsylvania Supreme Court has consistently held that enactments of the General Assembly enjoy a strong presumption of constitutionality. *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 165 (1996) (citing *Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339, 1340 (1983)). All doubts are to be resolved in favor of sustaining the constitutionality of the legislation. *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81, 87 (1988), *affirmed,* 494 U.S.

---

5. We note that, even if we considered this claim as a challenge to the sufficiency of the evidence as Elia presents it, Elia nonetheless would not be entitled to relief. We review evidence in sufficiency challenges in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Brown,* 23

A.3d 544, 559–60 (Pa.Super.2011) (*en banc*) (citation omitted). Viewing the relevant evidence in such a deferential way, we have little difficulty in concluding that the Commonwealth established that the IDSI occurred in Montgomery County beyond a reasonable doubt.

299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) (citing *Hayes v. Erie Ins. Exch.,* 493 Pa. 150, 425 A.2d 419, 421 (1981)). "[N]othing but a clear violation of the Constitution—a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void." *Glancey v. Casey,* 447 Pa. 77, 288 A.2d 812, 818 (1972) (citing *Busser v. Snyder,* 282 Pa. 440, 128 A. 80 (1925)). In other words, "we are obliged to exercise every reasonable attempt to vindicate the constitutionality of a statute and uphold its provisions." *Commonwealth v. Chilcote,* 396 Pa.Super. 106, 578 A.2d 429, 435 (1990) (citing *Commonwealth v. Trill,* 374 Pa.Super. 549, 543 A.2d 1106, 1116 (1988)). "The right of the judiciary to declare a statute void, and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave that it is never to be exercised except in very clear cases." *Erie & N.E. R.R. Co. v. Casey,* 26 Pa. 287, 300 (1856). Moreover, one of the most firmly established principles of our law is that the challenging party must prove the act "clearly, palpably and plainly" violates the constitution. *Barud,* 681 A.2d at 165. *See Blystone, supra.* Finally, we note that:

The power of judicial review must not be used as a means by which the courts might substitute its judgment as to public policy for that of the legislature. The role of the judiciary is not to question the wisdom of the action of [the] legislative body, but only to see that it passes constitutional muster.

*Finucane v. Penna. Marketing Bd.,* 136 Pa.Cmwlth. 272, 582 A.2d 1152, 1154 (1990) (citations omitted).

*Commonwealth v. Barnett,* 50 A.3d 176, 196–97 (Pa.Super.2012) (quoting *Commonwealth v. Smith,* 732 A.2d 1226, 1235–36 (Pa.Super.1999)) (some citations modified). With these principles in mind, we hold that 42 Pa.C.S. § 9718(a) is constitutional.

 Elia limits his argument to the Pennsylvania Constitution. To this end, Elia sets forth a comprehensive analysis pursuant to *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), wherein Elia argues adamantly that Article 1, Section 13 of the Pennsylvania Constitution provides broader protection against cruel punishments than the Eighth Amendment to the United States Constitution. While we appreciate Elia's zealous advocacy, we decline his invitation to construe our Constitution differently than the United States Supreme Court has interpreted the Eighth Amendment to the United States Constitution. Indeed, Pennsylvania courts have repeatedly and unanimously held that "[t]he Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendments [to] the United States Constitution," and that "the Pennsylvania Constitution affords no broader protection against excessive sentences than that provided by the Eighth Amendment to the United States Constitution." *Barnett,* 50 A.3d at 197 (quoting *Commonwealth v. Yasipour,* 957 A.2d 734, 743 (Pa.Super.2008)). Because these constitutional provisions are coterminous, we need only review Elia's claim under the Eighth Amendment. *Barnett,* 50 A.3d at 197 (citing *Commonwealth v. Parker,* 718 A.2d 1266, 1268 (Pa.Super.1998) ("[Because] our analysis of this case under the United States Constitution is applicable to the state constitution, . . . we need not engage in a separate state constitutional review.")).

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., Amend. VIII. The Cruel and Unusual Punishment clause "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). However, "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences which are grossly disproportionate to the crime." *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 209 (1997) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)).

In *Barnett*, we reaffirmed the principle that, before we determine whether a statute imposes an unconstitutional punishment, the challenging party must establish an inference that the challenged statute is grossly disproportionate to the conduct to be punished. In doing so, we quoted the following passage from *Parker*:

> *Harmelin* recognized that the criteria for examining the proportionality of a sentence were established in [*Solem, supra*]. *Solem* instructed that a court must consider: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals for the commission of the same crime in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. In *Harmelin, supra*, Justice Kennedy held that the *Solem* criteria did not form a mandatory and rigid three-part test. Rather, in determining whether a punishment is disproportionate, the comparative test of *Solem* may not be necessary, and is required only after a showing that raises an inference of gross disproportionality. Following Justice Kennedy in *Harmelin*, [an *en banc* panel of this Court in *Commonwealth v. Spells*, 417 Pa.Super. 233, 612 A.2d 458 (1992) (*en banc*),] held that when such gross disproportionality is not shown, the second and third prongs of *Solem* are not necessary.

*Barnett*, 50 A.3d at 198–99 (quoting *Parker*, 718 A.2d at 1268–69). Thus, as we did in *Barnett*, we first must ascertain whether Elia has created an inference of gross disproportionality between the ten-year mandatory minimum sentence prescribed by 42 Pa.C.S. § 9718(a) and IDSI of a child less than sixteen years-old.

In *Commonwealth v. Wildermuth*, 347 Pa.Super. 640, 501 A.2d 258 (1985), we rejected a constitutional challenge to subsection 9718(a)'s predecessor statute, which imposed a five-year mandatory minimum sentence for offenders convicted of IDSI. In that case, we adopted a portion of the trial court's opinion, wherein the trial court "cogently observed" the following:

> Insofar as 42 Pa.C.S. § 9718 is concerned, we do not conclude that the imposition of a mandatory five[-]year prison term is cruel or unusual. The crimes in question here, rape and involuntary deviate sexual intercourse, committed against a minor, are crimes of great severity and the legislature in enacting this statute expressed its grave concern for the protection of minors. Specifically, this act is designed to punish those who prey on the helpless children in our society. Clearly the nature and severity of the crimes justify the legislature's rationally based minimum sentence.

*Id.* at 261.

Since *Wildermuth* was decided, the General Assembly increased the mandatory penalty for IDSI from five years to ten

years. In all other respects, nothing has changed. Sexual crimes against children unmistakably continue to pose a significant harm to the physical and emotional well-being of children. Categorically, they remain "crimes of great severity." We may reasonably infer that the General Assembly believed these crimes to be of such severity that it believed it best to increase the minimum penalty to further curtail such crimes, and to deter the commission of similar future crimes. The General Assembly's "grave concern for the protection of minors" falls appropriately within the purview of that body's legislative function. This reflects a judgment of our elected lawmakers that this Court may not, and should not, second-guess.

Elia maintains that the imposition of the mandatory minimum sentence in this case is grossly disproportionate, because the triggering offense does not require vaginal sexual intercourse and because the sexual conduct in this case did not include force or coercion. Elia compares and contrasts his IDSI conviction with crimes such as aggravated indecent assault and statutory sexual assault, which may include vaginal sexual intercourse or force and coercion but do not trigger a ten-year mandatory minimum sentence. Elia's argument is unpersuasive and insufficient to meet his demanding burden of establishing an inference of gross disproportionality.

First, the fact that discrepancies exist within the Crimes Code and the Code's sentencing provisions does not render a particular mandatory minimum sentence unconstitutional. The fact that the General Assembly has not enacted a mandatory minimum sentence for one particular crime, one which Elia feels is more severe, does not, *ipso facto*, mean that the mandatory minimum sentence for IDSI is constitutionally infirm. Second, the absence of force or coercion does not render the man-datory minimum statute unconstitutionally disproportionate to Elia's conduct. The Commonwealth has a legitimate state interest in protecting minors younger than sixteen years old from adult sexual aggressors. *Commonwealth v. Albert,* 563 Pa. 133, 758 A.2d 1149, 1154 (2000). To that end, the General Assembly has chosen to punish those offenders uniformly with a mandatory minimum sentence, regardless of whether the victim consented or was coerced into the sexual contact. The absence of consent in one particular case does not vitiate the General Assembly's reasonable punitive goal. Moreover, the absence of consent or coercion does not, by itself, give rise to a reasonable inference that the sentence was grossly disproportionate.

Elia engaged in oral sex with a fourteen-year-old girl when he was twenty-five years-old. Whether forced or not, this was the type of conduct that the General Assembly chose to criminalize and sought to deter and punish through the enactment of 42 Pa.C.S. § 9718(a). The punishment is not grossly disproportionate to that crime merely because Elia did not force the victim to engage in oral sex. It is the oral sex itself, however it occurs, that the General Assembly intended to punish. Such a determination is evinced by the fact that lack of consent is not an element of, and has no bearing upon, IDSI with a child under the age of sixteen. *See* 18 Pa.C.S. §§ 3213(a)(7), 3101.

Nothing has changed since this Court's pronouncement in *Wildermuth* except the length of the mandatory minimum sentence. The crime committed remains severe. A lengthy sentence is a constitutional means to punish and deter offenders. The increase in the length of the sentence does not, by itself, induce us to conclude that the sentence raises meaningful constitutional concerns. Additionally, Elia has

presented no arguments sufficient to overcome his substantial burden of proving gross disproportionality under the Eighth Amendment. Inasmuch as Elia has failed to establish a reasonable inference that the statute is grossly disproportionate, we need not consider the remainder of the three-part *Solem* test. *See Barnett, Parker, supra.* Consequently, Elia's constitutional challenge to 42 Pa.C.S. § 9718(a) fails.

Judgment of sentence affirmed.

SHOGAN, J. files a Concurring Opinion.

CONCURRING OPINION BY SHOGAN, J.:

The learned majority presents a thorough and thoughtful analysis of the issues raised in this appeal. However, this Court has previously held that "the bald assertion of innocence" does not *per se* constitute a fair and just reason for allowing a defendant to withdraw his guilty plea. *Commonwealth v. Cole,* 387 Pa.Super. 328, 564 A.2d 203, 206 (1989) (*en banc*). Instead, a trial court should consider the totality of the circumstances. *Id.* at 208 (Judge McEwen, Concurring Opinion). Similarly, I conclude that a defendant's bald contention that the evidence is insufficient does not constitute a fair and just reason to permit the withdrawal of a guilty plea. Thus, I respectfully disagree with the majority that this contention constituted a fair and just reason to permit Appellant to withdraw his plea in this case. *See* Majority Opinion at 263–64. Instead, I would rely upon Appellant's specific assertion that he was not guilty, through the uncontested statement of his plea counsel, in concluding that this issue lacks merit on direct appeal. *See Commonwealth v. Johnson,* 961 A.2d 877 (Pa.Super.2008) (stating that counsel represent their clients and their admissions are *prima facie* the admissions of their clients). Fur-

thermore, I would decline to address the voluntariness of the withdrawal because this argument was not presented by Appellant. In all other respects, I join the majority's opinion.