J-S43010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PETER VARGAS, | |
| Appellant | No. 1736 EDA 2014 |

Appeal from the Judgment of Sentence of May 27, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014146-2013

BEFORE:  GANTMAN, P.J., PANELLA AND OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 11, 2015**

Appellant, Peter Vargas, appeals from the judgment of sentence entered on May 27, 2014 following his bench trial convictions for possession with intent to deliver a controlled substance (PWID) and conspiracy.[1]  Upon review, we affirm.

The trial court summarized the facts of this case as follows:

> … Philadelphia Police Officer Jason Seigafuse testified that he was on duty on October 23, 2013 at approximately 10:00 p.m., working in his capacity as a police officer with the Narcotics Enforcement Team when he encountered [] [A]ppellant in the area of the 1900 block of East Arizona Street in Philadelphia.
>
> At that time and place, the officer indicated that he set up a surveillance at that intersection and he observed [Appellant]

---

[1]  35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 903, respectively.

along with another male (Jonathon Blalock) standing at or near the corner of Jasper and Arizona, approximately 30 feet [e]ast of the corner when a white male, identified as Charles Jenkins approached both males and had a brief conversation with both males. At this time [Appellant] separated and stood at the corner of Jasper and Arizona in the intersection looking up and down. At that time Mr. Blalock received currency from Mr. Jenkins and then Mr. Blalock handed Mr. Jenkins certain items that he removed from his pants pocket. Mr. Jenkins was ultimately stopped by police who recovered from Mr. Jenkins, heroin in a white Ziploc baggie.

A short time later, approximately 10:15 p.m., another male (Mr. [Francis] Kelso) came to the intersection and the same series of events occurred wherein [Appellant], after a brief conversation with the second male and Mr. Blalock, separated from the men and stood at the intersection looking up and down in both directions. Mr. Blalock received currency from Mr. Kelso and then Mr. Blalock handed Mr. Kelso certain items he removed from his pants pocket. Mr. Kelso was ultimately stopped by police who recovered from Mr. Kelso, heroin and cocaine in white Ziploc baggies.

Officer Seigafuse further testified that once the buyers left, they ([Appellant] and Mr. Blalock) met back up. It was only when buyers would come up and transactions would happen that he ([Appellant]) would separate and look up and down the intersection.

[] [A]ppellant and Mr. Blalock were stopped and arrested on the 1900 block of Arizona Street. [Fifty dollars in] U.S. currency was recovered from Mr. Blalock. Nothing was recovered from [] [A]ppellant.

Trial Court Opinion, 3/4/2015, at 2-3 (record citations omitted).

The Commonwealth charged Appellant with the aforementioned charges, as well as simple possession of a controlled substance, 35 P.S. § 780-113(a)(16). The case advanced procedurally as follows:

At the preliminary hearing on November 12, 2013, [] [A]ppellant was ordered held for court on all charges. A motion to quash was heard before the start of trial and denied. A bench trial was held on May 27, 2014. The [trial court] found [] [A]ppellant guilty of [PWID] and [c]onspiracy. Appellant was immediately sentenced to a term of three (3) years [of] concurrent probation on both charges. … The [simple] possession charge (Count 3) was nolle prossed. On June 6, 2014, [the trial] court denied [A]ppellant's post-sentence [m]otion and the sentence of three (3) years [of] probation remained. A timely [n]otice of [a]ppeal was filed on June 10, 2014. Thereafter, a timely [s]tatement of [e]rrors [c]omplained of on [a]ppeal was also filed on behalf of [] [A]ppellant. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 4, 2015.]

*Id.* at 1.

On appeal, Appellant presents the following issue for our review:

Was not the evidence insufficient to prove criminal conspiracy or [PWID] as [A]ppellant was merely present on the street in the vicinity of another man for fifteen minutes when the other man sold drugs?

Appellant's Brief at 3.

Appellant argues that the Commonwealth failed to present sufficient evidence to support his convictions for PWID and conspiracy. In sum, he avers:

During a fifteen minute drug surveillance, another man, Jonathon Blalock, sold drugs. Blalock was arrested with the proceeds. [Appellant] exchanged nothing and had nothing. He was merely present, hanging out on the street.

*Id.* at 8. In distinguishing his case from our decision in ***Commonwealth v. McCall***, 911 A.2d 992 (Pa. Super. 2006), Appellant notes: (1) Appellant

- 3 -

was thirty feet away each time Blalock sold drugs; whereas, in **McCall**, the co-defendants stayed side-by-side for an hour; (2) Appellant never received proceeds from the drug sales, while McCall was arrested with over $1,000.00 in small denominations on his person, and; (3) **McCall** involved a sophisticated narcotics operation which would have required a lookout; whereas, here, "[t]he relatively minor nature of Blalock's sales makes the inference that he had a 'lookout' less reasonable." Appellant's Brief at 10-11. Appellant also argues that the police did not recover the narcotics from his person and the Commonwealth failed to prove he exercised conscious dominion or control over them in order to prove PWID. **Id.** at 12-15.

Our standard of review when reviewing the sufficiency of the evidence has been recited as follows:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence

produced, is free to believe all, part or none of the evidence.

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.

As our Court has further explained with respect to the agreement element of conspiracy:

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Commonwealth v. McCall*, 911 A.2d 992, 996-997 (Pa. Super. 2006) (internal citations and quotations omitted). In a case dealing with conspiracy and PWID, "successful proof of a conspiracy makes each co-conspirator fully liable for all of the drugs recovered, without the necessity of

proving constructive possession." ***Commonwealth v. Perez***, 931 A.2d 703, 709 (Pa. Super. 2007).

Here, the trial court determined:

> [a] review of the police officer's testimony demonstrated [] that the alleged sellers were inseparable until such time as an actual sale was about to be made. After brief conversations with the buyers, it was then that the men separated and [] [A]ppellant took the role as a 'lookout' during the course of the drug transactions. Sales of heroin and cocaine were confirmed as the police arrested the buyers who had just recently interacted with [] [A]ppellant and Mr. Blalock.

Trial Court Opinion, 3/4/2015, at 6.

Upon review of the trial transcript, we agree. Officer Jason Seigafuse's testimony at trial belies Appellant's claim that he was merely present when the two hand-to-hand narcotics transactions transpired. Officer Seigafuse testified that Appellant and Mr. Blalock were engaged in conversation on the corner of Jasper and Arizona Streets on the day in question. N.T., 5/27/2014, at 12. Charles Jenkins "approached both males who were standing together" and "had a brief conversation with both males." ***Id.*** "[Appellant] separated and stood at the corner of Jasper and Arizona in the intersection looking up and down." ***Id.*** at 12-13. Officer Seigafuse witnessed a hand-to-hand narcotic transaction transpire between Mr. Blalock and Mr. Jenkins. ***Id.*** at 13. Police recovered crack cocaine from Mr. Jenkins. ***Id.*** Fifteen minutes later, Officer Seigafuse witnessed the exact same course of events with Francis Kelso. ***Id.*** at 14-15. Police recovered

heroin and crack cocaine from Mr. Kelso. *Id.* Officer Seigafuse testified that Appellant spoke with both Mr. Jenkins and Mr. Kelso, then walked away and looked up both Jasper and Arizona Streets while the transactions took place, and "[o]nce the buyers left, [Appellant and Mr. Blalock] met back up." *Id.* at 16.

Based upon our standard of review, we discern no abuse of discretion in the trial court's findings or an error of law in its determination that the Commonwealth presented sufficient evidence to support Appellant's convictions for conspiracy and PWID. Here, Appellant actively participated with Mr. Blalock to enable him to sell narcotics to Mr. Jenkins and Mr. Kelso. Appellant participated in the initial narcotic sales negotiations with the buyer, acted as a lookout, and then resumed conversation with Mr. Blalock after the sale was completed. This happened twice. It was appropriate for the trial court to infer a conspiratorial relationship based upon the aforementioned evidence. Moreover, there is no dispute that Mr. Blalock was engaged in the sale of drugs. In fact, Appellant concedes as much in his brief on appeal. *See* Appellant's Brief at 13 ("[Appellant walked thirty feet away **when Blalock sold drugs**.") (emphasis added); *id.* at 15 ("[T]here is no evidence that Mr. Vargas had dominion or control **over the drugs that** [**Mr.**] **Blalock sold** to two buyers.") (emphasis added). Having determined that the conspiracy was sufficiently proven, Appellant is liable for Mr. Blalock's criminal actions within the scope of the proven conspiracy. *See Perez*, 931 A.2d at 709 ("[S]uccessful proof of a conspiracy makes each co-

conspirator fully liable for all of the drugs recovered, without the necessity of proving constructive possession."); *see also McCall*, 911 A.2d at 997 ("Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.").[2]  Hence, Appellant's sufficiency claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2015

---

[2]  While the trial court found that Appellant constructively possessed the narcotics, there is no necessity of proving constructive possession when proven co-conspirators are engaged in the sale of narcotics. *See Perez*, 931 A.2d at 709.  "[A]n appellate court may affirm a valid judgment based upon any reason appearing in the record." *Commonwealth v. Elia*, 83 A.3d 254, 264 (Pa. Super. 2013).