J-S74019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:    PENNSYLVANIA
:
v. :
:
:
DEION TINDALE :
:
Appellant : No. 1565 EDA 2016

Appeal from the Judgment of Sentence December 22, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010115-2014

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY LAZARUS, J.:          **FILED FEBRUARY 06, 2018**

Deion Tindale appeals from his judgment of sentence, entered in the

Court of Common Pleas of Philadelphia County, after he entered an open plea

of guilty to charges of robbery,[1] burglary,[2] criminal conspiracy to commit

robbery,[3] and persons not to possess firearms.[4]  Upon careful review, we

affirm.

The following facts are gleaned from the trial court opinion in this

matter, which quotes the facts recited by counsel for the Commonwealth in

support of Tindale's guilty plea.  On July 23, 2014, at approximately 1:50

---

[1] 18 Pa.C.S.A. § 3701.

[2] 18 Pa.C.S.A. § 3502.

[3] 18 Pa.C.S.A. § 903.

[4] 18 Pa.C.S.A. § 6105.

a.m., Raheed Wroten, his girlfriend, Phelicia Lewis, and their five-month-old child were at home in their apartment at 843 North 20th Street in Philadelphia. Tindale knocked on the door, asking to use the phone. Wroten answered the door, at which time Tindale and his co-defendant, Hassan Austin, forced their way into the apartment at gunpoint. Tindale and Austin demanded money and searched the apartment for valuables, filling a trash bag with sneakers, clothes, and other items. One of the co-defendants demanded the sum of $2,000 and forced Wroten to contact people to bring the money to the apartment. Wroten called his mother and asked her to bring the requested sum as soon as possible. She hung up, but when Wroten immediately called her back, she realized something was amiss and contacted the police.

Philadelphia Police Officers Holden, Smaron and Dickerson[5] responded to the radio call. As Officer Holden knocked on the door, Officer Dickerson looked through the window and saw Tindale patting down Wroten, whose hands were in the air, and going through his pockets. Officer Dickerson then saw Tindale lead Lewis to the back room. At this point, the officers did not know whether Lewis was a co-conspirator who might be headed out the back door with Tindale. Accordingly, Officers Dickerson and Holden ran to the rear of the property.

Meanwhile, Wroten was instructed by the co-defendants to answer the front door, as they believed the knock was Wroten's mother bringing the

---

[5] The record does not contain the officers' first names.

money. The co-defendants told Wroten "if anything happens, any funny business, we're going to kill" Lewis and the baby. Trial Court Opinion, 1/30/17, at 3. Wroten opened the door and told Officer Smaron that the perpetrators were inside and had guns. Officer Smaron entered the premises and instructed everyone to get down on the floor. Tindale was observed with a gun in his hand; he darted back to a bedroom, put the gun under a mattress, and surrendered to police.

Tindale was arrested and charged with numerous offenses related to the home invasion robbery. Due to concerns about witness intimidation, the case proceeded by way of an Indicting Grand Jury. Trial was scheduled for May 26, 2015, on which date Tindale entered an open plea of guilty to the above offenses. The court accepted the plea and deferred sentencing, which, following continuance requests from both the Commonwealth and the defense, was scheduled to occur on October 22, 2015. However, on October 21, 2015, Tindale filed a motion to withdraw his guilty plea, in which he stated "[a]s part of his grounds for his [m]otion, defendant asserts his innocence." Motion to Withdraw Guilty Plea, 10/21/15, at ¶ 5. The Commonwealth opposed the motion, and a hearing was held on December 4, 2015, after which the trial court denied Tindale's motion.

Tindale was ultimately sentenced on December 22, 2015 to an aggregate term of 5½ to 11 years' imprisonment, followed by 10 years of probation. Tindale's post-sentence motion, in which he requested the court reconsider its denial of his motion to withdraw his plea, was denied. This

timely appeal follows, in which Tindale asserts that the trial court erred in denying his motion to withdraw his guilty plea.

We review a trial court's ruling on a pre-sentence motion to withdraw a guilty plea for an abuse of discretion. *Commonwealth v. Islas*, 156 A.3d 1185, 1187 (Pa. Super. 2017). "An abuse of discretion exists when a defendant shows any 'fair and just' reasons for withdrawing his plea absent 'substantial prejudice' to the Commonwealth.'" *Commonwealth v. Elia*, 83 A.3d 254, 261 (Pa. Super. 2013), quoting *Commonwealth v. Pardo*, 35 A.3d 1222, 1227 (Pa. Super. 2011).

Pre-sentence withdrawal of a guilty plea is governed by Pennsylvania Rule of Criminal Procedure 591(A), which provides as follows:

> (A) At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or nolo contendere and the substitution of a plea of not guilty.

Pa.R.Crim.P. 591(A). "Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made *before sentencing* should be liberally allowed." *Commonwealth v. Forbes*, 299 A.2d 268, 271 (Pa. 1973) (emphasis in original) (ellipses omitted).

> [I]n determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, the test to be applied by the trial courts is fairness and justice. If the trial court finds "any fair and just reason," withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been "substantially prejudiced."

*Id.* (internal citations and some internal quotations omitted).

- 4 -

It is well-settled that "an assertion of innocence may constitute a fair and just reason for the pre-sentence withdrawal of a guilty plea." *Commonwealth v. Miller*, 639 A.2d 815, 816–17 (Pa. Super. 1994). However, a bare assertion of innocence is not, in and of itself, a sufficient reason to require a court to grant such a request. *Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1285 (Pa. 2015). Rather,

> a defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea. More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts.

*Id.* at 1292.

> Finally, we also note that

> [s]o many safeguards have been imposed by law to ensure that a guilty plea is voluntarily and knowingly made, that a defendant should not be permitted to withdraw his guilty plea, even before sentencing, merely by intoning the allegation that "I am not guilty," where, as here, his plea of guilty was supported by an extensive colloquy in which the defendant expressly admitted guilt.

*Commonwealth v. Cole*, 564 A.2d 203, 207 (Pa. Super. 1989).

Here, the trial court concluded that the totality of the circumstances, including Tindale's knowing and voluntary entry of his guilty plea and subsequent bald assertion of innocence, viewed in light of his conduct in the

interim, did not establish a "fair and just" reason for withdrawal of his plea.[6]

The court summarized its rationale as follows:

> [Tindale] filed his motion to withdraw on October 21, 2015, approximately five months after having pled guilty, and only one day before his sentencing hearing. [Tindale] simply stated that "[a]s a part of his grounds for his motion, defendant asserts his innocence." [However, Tindale's] assertion of innocence was not "part" of the grounds for his motion . . .; it was the only ground. This asserted reason for moving to withdraw his plea was belied by the record. First, [Tindale] had knowingly and voluntarily entered a guilty plea to the charged conduct. He had represented both in writing and verbally that he understood all aspects of his plea. He stated that he had committed the crimes to which he was pleading guilty; that his attorney had explained the elements of those crimes to him; that his decision to plead guilty was made free from promises, threats, or force; that he understood the rights he was giving up by pleading guilty; and that he was satisfied with his attorney.
>
> [Tindale's] assertion of innocence was also belied by his numerous conversations with acquaintances while in custody before and after he pleaded guilty. These conversations established [Tindale's] repeated efforts to keep the victims from testifying against him at trial. Between July 25, 2014 and August 8, 2014, [Tindale] expressed his concern over whether "Bull"[7] was going to show up to court and asked that an individual named "D" ensure that he not. Then, on October 7, 2015, more than four months after pleading guilty, [Tindale] said he was "thinking about taking that [plea] back[.]" He said he did not "want to talk on the phone for real for real," but then referred to "D" again and said, "So I was thinking if they don't, if they ain't . . . if I get another . . . Know what I mean? Another . . . I'm thinking if it be another day . . . maybe then . . . know what I mean?" He asked the woman

---

[6] Because the trial court concluded that Tindale failed to establish a fair and just reason for withdrawal of his plea, the court did not address whether withdrawal would substantially prejudice the Commonwealth. Because we conclude that the trial court committed no abuse of discretion in so finding, we similarly need not address the prejudice prong of the ***Forbes*** test.

[7] Complainant Raheed Wroten.

with whom he was speaking to get in touch with "D" and "with any of my brothers and, and, tell them the only way for me to [get home] is for . . . know what I'm saying . . . for D and Cleara to uh . . . see what I'm saying?"

Finally, on October 21, 2015, *the very day he filed his motion to withdraw his guilty plea asserting his innocence*, [Tindale] mistakenly admitted his guilt:

> [TINDALE]: You know what the f\*\*k I'm locked up for, right? I rushed a n\*\*ga's house while they in there. With babies and shit, see . . . Oh shit. Hello? Yeah. This not me talking on the phone. I said some shit I didn't want to say.
>
> FEMALE: (laughter) You know what?
>
> [TINDALE]: I said some shit I didn't want to say . . . that was a cartoon. That was a blooper[.]

Trial Court Opinion, 1/30/17, at 5-6 (citations to record and footnote omitted; emphasis added).

We can discern no abuse of discretion on the part of the trial court in denying Tindale's motion. Based on Tindale's conversations while in custody, it is apparent that his bald assertion of innocence was simply a pretext employed in an attempt to manipulate the system and allow him an opportunity, with the assistance of "D" and "Cleara," to "dissuade" the complainants from testifying at trial. Under these circumstances, Tindale cannot be said to have demonstrated a fair and just reason for withdrawing his plea. ***See Commonwealth v. Hvizda***, 116 A.3d 1103 (Pa. 2015) (affirming trial court's rejection of defendant's bald assertion of innocence in motion to withdraw plea where defendant was recorded admitting his guilt in telephone conversations from prison).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/6/18