J-S39023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD GEORGE CUNNINGHAM | |
| Appellant | No. 1821 WDA 2013 |

Appeal from the PCRA Order of November 7, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0015297-2006

BEFORE:  BENDER, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 03, 2014**

Richard Cunningham ("Cunningham") appeals the November 7, 2013 order that denied his petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  Cunningham's counsel has filed a petition to withdraw as counsel and a **Turner**/**Finley**[1] brief.  After review, we affirm the order and grant counsel's petition.

On direct appeal, this Court summarized the factual and procedural history of this case as follows:

> On the evening of February 19, 2005, Kevilin Middleton hosted a birthday party for T.C. Lyerly.  Toward the end of the party, Mr. Middleton made arrangements for exotic dancers to come to his

_____

[*]    Retired Senior Judge assigned to the Superior Court.

[1]    **Commonwealth    v.    Turner**,    544    A.2d    927    (Pa.    1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

residence and perform in exchange for two hundred dollars ($200). The exotic dancers, Angel Potter and Helen McCorkle, arrived at Mr. Middleton's residence along with Geneva Burrell. At this time, Mr. Middleton, Mr. Lyerly, and Chaoe Davis were the only people still at the party. Before the dancers' performance, however Mr. Middleton insulted Ms. Potter's appearance and refused to provide payment. Mr. Middleton, Ms. Potter, and Ms. Burrell began to argue. The argument escalated, and Ms. Potter reached into Mr. Middleton's pocket and removed money. Ms. Burrell advised Ms. Potter to return the money, and Ms. Potter eventually complied. Shortly thereafter, Ms. Potter and Ms. Burrell telephoned [Cunningham] and his co-defendants to come to Mr. Middleton's home and help secure payment.

Approximately thirty (30) minutes later, a van arrived at Mr. Middleton's house. [Cunningham], Alfon Brown, Ramone Coto, and Eric Surratt exited the van and approached the residence. The men carried guns, and [Cunningham] wore a hooded sweatshirt and ski mask. Upon their arrival, at least three (3) of the men entered Mr. Middleton's house without permission and demanded payment for the dancers. Before Mr. Middleton had an opportunity to comply, the men began firing at Mr. Middleton, Mr. Lyerly, and Mr. Davis. Mr. Lyerly and Mr. Davis died instantly. Mr. Middleton sustained critical injuries from the gunshots.

The Commonwealth charged [Cunningham] with two (2) counts of criminal homicide, criminal attempt, burglary, aggravated assault, carrying a firearm without a license, and criminal conspiracy. On June 18, 2007, [Cunningham] proceeded to a bench trial. The court tried [Cunningham] and his co-defendants jointly.

At trial, the Commonwealth presented testimony from Ms. McCorkle, Ms. Burrell, and Ms. Potter. Ms. McCorkle testified that she saw four (4) men exit a van and walk towards Mr. Middleton's house carrying guns. She identified Mr. Brown, Mr. Coto, and Mr. Surratt, but did not recognize the fourth gunman. Ms. Burrell, however, positively identified [Cunningham] as the fourth man, who entered the house wearing a ski mask and carrying a gun. Ms. Potter also testified she heard Ms. Burrell direct [Cunningham] to Mr. Lyerly's location inside the house. Further, a latent fingerprint examiner conclusively established the fingerprints lifted from the front storm door at Mr. Middleton's residence matched [Cunningham's] fingerprints.

Following numerous continuances, the court scheduled closing arguments for February 8, 2008. After the defense rested its case, however, [Cunningham's] counsel became seriously ill and died. Consequently, the court appointed replacement counsel to represent [Cunningham]. On February 8, 2008, replacement counsel appeared before the court and explained that he was unprepared to proceed. As a result, the court rescheduled [Cunningham's] closing argument for July 7, 2008, giving replacement counsel five (5) months to consult with [Cunningham], review the file, and prepare to close for the defense.

On July 7, 2008, replacement counsel delivered closing argument. Subsequently, the court found [Cunningham] guilty of two (2) counts of second degree murder and one (1) count each of burglary and criminal conspiracy.[2] On September 22, 2008, the court sentenced [Cunningham] to concurrent terms of life imprisonment for his second degree murder convictions. The court also imposed concurrent terms of thirty (30) to sixty (60) months' imprisonment for his burglary conviction and eighteen (18) to thirty-six (36) months' imprisonment for his conspiracy conviction. On October 2, 2008, [Cunningham] timely filed a post-sentence motion, which the court denied on December 9, 2008. [Cunningham] did not pursue a direct appeal with [the Superior Court].

On April 6, 2009, [Cunningham] timely filed a pro se petition pursuant to [the PCRA]. Thereafter, the PCRA court appointed counsel. On July 8, 2009, counsel filed an amended PCRA petition, requesting reinstatement of [Cunningham's] appellate rights *nunc pro tunc*. On August 20, 2009, the PCRA court granted the requested relief.

On September 18, 2009 [Cunningham] timely filed his notice of appeal.

*Commonwealth v. Cunningham*, 1614 WDA 2009, slip op. at 1-4 (Pa. Super. July 30, 2010) (footnote omitted).

---

2    18 Pa.C.S.A. §§ 2502(b), 3502(a), and 903(a), respectively.

This Court affirmed Cunningham's judgment of sentence in part, but vacated the thirty to sixty month sentence for burglary. The panel held that the sentencing court erred in imposing a separate sentence for burglary because that conviction was the predicate felony for the felony murder conviction. *Id.* at 14. Cunningham filed a petition for allowance of appeal with the Pennsylvania Supreme Court, but the petition was denied on March 30, 2011. *Commonwealth v. Cunningham*, 20 A.3d 484 (Pa. 2011).

On December 27, 2011, Cunningham timely filed a *pro se* PCRA petition. Counsel was appointed, and she filed an amended PCRA petition on June 11, 2012. On August 21, 2012, Cunningham filed a *pro se* motion seeking to terminate PCRA counsel's representation. On August 29, 2012, Cunningham filed a *pro se* motion to amend the PCRA petition to add new claims. On September 24, 2012, PCRA counsel filed a motion for a *Grazier*[3] hearing to determine whether Cunningham knowingly and voluntarily wished to proceed *pro se*. On October 12, 2012, PCRA counsel filed a supplement to the amended PCRA petition, raising three additional claims that Cunningham included in his motion to amend.

On April 25, 2013, the PCRA court held a hearing on the PCRA petition. The PCRA court first asked Cunningham whether he still wished to represent himself and he declined. Notes of Testimony ("N.T."), 4/25/2013, at 2-3.

---

[3] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

Counsel then presented argument. No testimony was taken. Following the hearing, on May 20, 2013, the PCRA court granted Cunningham's motion to appoint a fingerprint expert. On November 6, 2013, PCRA counsel filed a "Notice of Status of Defense Expert's Review of Print Evidence." In that filing, PCRA counsel averred that the copy of the evidence had been provided to the defense expert and that "[n]o further argument or supplemental matter [would] be submitted by the defense regarding the print evidence." Notice of Status of Defense Expert's Review of Print Evidence, 11/6/2013, at 1.

On November 7, 2013, the PCRA court denied Cunningham's petition. On November 15, 2013, Cunningham filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On December 17, 2013, the trial court filed its Pa.R.A.P. 1925(a) opinion. On January 30, 2014, PCRA counsel filed a petition to withdraw as counsel.

In the *Turner*/*Finley* brief, counsel identifies four potential issues:

1. Whether [trial counsel] was ineffective for failing to file a motion to sever, for purposes of trial, [Cunningham's] case from Co-Defendant Surratt's case?

2. Whether [trial counsel] was ineffective by failing to present an expert to challenge the reliability of the fingerprint/hand-print evidence?

3. Whether [Cunningham's] mandatory sentences of life in prison without parole, which prohibits the court from considering mitigating factors, is unconstitutional under Article I, Section 13 of the Pennsylvania Constitution, the Eighth and Fourteenth Amendments to the United States Constitution, Article 5 of the Universal Declaration of Human Rights and/or Article 7 of the International Covenent on Civil

and Political Rights and whether failure to apply the decision of **Miller v. Alabama**, --- U.S. ---, 132 S. Ct. 2455 (2012) to the instant matter constitutes a violation of the equal protection clauses of the United Stated and Pennsylvania Constitutions?

4. Whether [Cunningham's] convictions and sentences are illegal and must be vacated and [Cunningham] discharged where the statutes defining the offenses and authorizing sentence are void for failure to contain the enacting clause set forth and mandated by/under 1 Pa.C.S. § 1101(a)?

**Turner**/**Finley** Brief at 3.

First, we must consider whether PCRA counsel has complied with the requirements for appointed counsel to withdraw pursuant to **Turner** and **Finley**. We previously have explained this procedure as follows:

> Counsel petitioning to withdraw from PCRA representation must proceed under [**Turner**/**Finley** and] . . . must review the case zealously. **Turner**/**Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

> Where counsel submits a petition and no-merit letter that satisfy the technical demands of **Turner/Finley**, the court — trial court or this Court — must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012) (citations omitted).

- 6 -

Here, PCRA counsel has filed a **Turner**/**Finley** brief. Counsel listed the issues Cunningham wished to raise. **Turner**/**Finley** Brief at 3. Counsel attested to her diligent review of the record. **Id.** at 19. Counsel then thoroughly reviewed each issue and concluded that each was without merit. **Id.** at 22-35. Counsel also sent a letter to Cunningham, stating that she had filed a petition to withdraw and enclosing the petition and **Turner**/**Finley** brief. Letter, 1/30/2014. In the letter, counsel also advised Cunningham of his right to proceed *pro se*, hire new counsel, and/or file a supplemental brief. **Id.** Counsel has attached the letter to her petition to withdraw.

We conclude that PCRA counsel has complied substantially with the **Turner**/**Finley** requirements. However, before passing upon PCRA counsel's motion to withdraw, we must conduct our own independent review of the record.

Our standard of review of a PCRA court order is as follows:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012) (internal citations omitted).

Here, Cunningham's first two issues are ineffective assistance of counsel ("IAC") claims. IAC claims are governed by the following standard:

> In Pennsylvania, counsel is presumed effective, and a defendant bears the burden of proving otherwise. In order to be entitled to relief on a claim of ineffective assistance of counsel, the PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying claim has arguable merit; (2) counsel whose effectiveness is at issue did not have a reasonable basis for his action or inaction; and (3) the PCRA petitioner suffered prejudice as a result of counsel's action or inaction. When determining whether counsel's actions or omissions were reasonable, we do not question whether there were other more logical course of actions which counsel could have pursued: rather, we must examine whether counsel's decisions had *any* reasonable basis. Further, to establish prejudice, a petitioner must demonstrate that but for the act or omission in question, the outcome of the proceedings would have been different. Where it is clear that a petitioner has failed to meet any of the three, distinct prongs . . ., the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met.

*Commonwealth v. Steele*, 961 A.2d 786, 796-97 (Pa. 2008) (citations and internal quotation marks omitted; emphasis in original).

The first issue raised is that trial counsel was ineffective for failing to seek to sever Cunningham's trial from that of his co-defendants. *Turner/Finley* Brief at 22. With regard to when defendants may be tried together, Rule 582 states in pertinent part:

> Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the

same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Pa.R.Crim.P. 582(A)(2).

Whether to grant a motion for severance is within the trial court's sound discretion and "should not be disturbed absent a manifest abuse of discretion." [*Commonwealth v. Chester*, 587 A.2d 1367, 1372 (Pa. 1991)]. *Chester* noted joint trials are preferred where conspiracy is charged. Severance may be proper where a party can establish the co-defendants' defenses are so antagonistic that a joint trial would result in prejudice. *Id.*, at 1372–73. However, the party seeking severance must present more than a mere assertion of antagonism:

[T]he fact that defendants have conflicting versions of what took place, or the extents to which they participated in [the crime], is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together. . . . Defenses become antagonistic only when the jury, in order to believe the essence of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony of his co-defendant.

*Commonwealth v. Housman*, 986 A.2d 822, 834 (Pa. 2009) (some citations omitted).

Here, the crimes for which all of the defendants were charged arose from the same series of acts that resulted in the illegal entry into Mr. Middleton's house and the deaths of Mr. Lyerly and Mr. Davis. Further, the defenses offered were not so antagonistic as to require severance. The defendants offered conflicting versions as to who entered the house, who shot the victims, and what each intended upon arrival at Mr. Middleton's house. All questioned Ms. Burrell's credibility. However, conflicting versions as to what took place or the extent of involvements are not a reason to

- 9 -

sever trial.  **See Housman**, *supra*.  Because the decision to try the defendants jointly was supported by law and not an abuse of the trial court's discretion, there is no arguable merit to the underlying claim.  Further, for the same reasons, there was a reasonable basis for trial counsel not to pursue a motion to sever the trials.  Because there is no proof of either of those prongs of the IAC claim, this issue has no merit.

Counsel next raises the issue that trial counsel was ineffective for failing to present an expert witness to challenge the Commonwealth's fingerprint evidence.  **Turner**/**Finley** Brief at 26.  However, there is no indication Cunningham suffered any prejudice, such that the outcome of the proceeding would have been different.  **See Steele**, *supra*.

Wayne Reutzel, a latent fingerprint examiner with the Allegheny County crime lab, testified that a latent fingerprint and palm print were found on the interior of the front storm door of Mr. Middleton's home.  Mr. Reutzel was able to match the prints to a set of known prints from Cunningham.  N.T., 8/16-17/2007, at 13-14.  Mr. Reutzel was unable to match the prints to copies of Cunningham's prints that were already in the fingerprint index database.  However, Mr. Reutzel explained that Cunningham's prior prints lacked sufficient detail, while the prints taken after Cunningham's arrest provided sufficient detail to make a reliable comparison.  **Id.** at 14, 16.  There is no evidence to suggest that any other

expert could have disputed the fingerprint evidence.[4]    Further, the fingerprint evidence was not the only evidence that placed Cunningham at the scene.  While Ms. Burrell's credibility was challenged, she testified that Cunningham entered Mr. Middleton's house.  Absent evidence that a second fingerprint expert could establish material doubt regarding Mr. Reutzel's testimony, Cunningham cannot satisfy the prejudice prong of the IAC standard.  Thus, this issue is also without merit.

PCRA counsel next addresses Cunningham's contention that his mandatory life sentence was prohibited for various reasons.  *Turner*/*Finley* Brief at 29-34.  First, Cunningham argues that the court in sentencing should have applied *Miller v. Alabama*, 132 S.Ct. 2455 (2012), which held that mandatory life sentences without parole for juveniles were unconstitutional.  However, we have previously held that *Miller* does not extend to adults or apply retroactively.  *Commonwealth v. Cintora*, 69 A.3d 759, 764 & n.4 (Pa. Super. 2013).  Here, Cunningham was twenty-three years old at the time of the homicides and *Miller* was decided after his conviction.  This issue is without merit.

Cunningham next states that the failure to extend *Miller* was an equal protection violation.  However, we have often found that juveniles may be

_____

[4]    The PCRA Court provided Cunningham with an expert to evaluate the fingerprint match in its May 20, 2013 order.  PCRA counsel averred that the expert received the information required to perform his evaluation.  However, Cunningham chose not to present that evaluation.

treated differently than adults without violating the Constitution. **See Commonwealth v. Berry**, 785 A.2d 994, 997 (Pa. Super. 2001) ("We are mindful of the public policy that requires that juveniles be treated differently from adult offenders."); **Commonwealth v. Sadler**, 447 A.2d 625, 627 (Pa. Super. 1982) ("[W]e believe that our Supreme Court could rationally adopt a rule of criminal procedure . . . without applying that rule to juvenile delinquency proceedings [and] we conclude that the equal protection clause does not mandate that the rule [be applied to juveniles]."); **see also Commonwealth v. Batts**, 66 A.3d 286, 290 (Pa. 2013) (quoting **Miller** for "[t]he 'foundational principle'. . . that 'imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children'"). Because the law may treat juveniles and adults differently without implicating equal protection, this argument is without merit.

Cunningham also alleges a violation of Article 1, Section 13 of the Pennsylvania Constitution, which prohibits cruel punishments, and the Eighth and Fourteenth Amendments to the United States Constitution. First, we have held that the rights under Article 1, Section 13 are co-extensive with, and no broader than, those of the United States Constitution. **Commonwealth v. Elia**, 83 A.3d 254, 267 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1007 (Pa. 2014). The United States Supreme Court has held that mandatory life sentences for adults do not run afoul of the Eighth Amendment. **See Rummel v. Estelle**, 445 U.S. 263, 285 (1980)

(upholding life sentence without parole under recidivist statute). This issue also has no merit.

Finally, Cunningham cites the Universal Declaration of Human Rights. However, the Supreme Court has recognized that the Declaration, while stating principles, is not a treaty or international agreement and therefore imposes no legal obligations. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004). Hence, it provides no legal authority to render Cunningham's sentence unconstitutional.

The last issue raised by PCRA counsel on behalf of Cunningham asserts that his conviction and sentence are illegal because the statutes upon which the conviction and sentence are based are void for failure to contain an enacting clause. *Turner*/*Finley* Brief at 34. However, the Crimes Code does contain the required enacting clause ("The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:") prior to Section 1 of the Code. *See* 1972, P.L. 1482, No. 334. Therefore, this argument is also meritless.

We have conducted our review of the record and find no issues of merit. Therefore, we grant counsel's petition to withdraw and affirm the PCRA court's order.

Order affirmed. Petition to withdraw granted.


Judgment Entered.

- 13 -

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/3/2014