J-A28010-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM EDWARD SHAW | : | |
| | : | |
| Appellant | : | No. 1717 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 17, 2019
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0000939-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM EDWARD SHAW | : | |
| | : | |
| Appellant | : | No. 1718 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 17, 2019
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0002460-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM EDWARD SHAW | : | |
| | : | |
| Appellant | : | No. 1719 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 17, 2019
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0002284-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-A28010-20

|  | : |  |
| :--- | :--- | :--- |
| v. | : |  |
|  | : |  |
|  | : |  |
| WILLIAM EDWARD SHAW | : |  |
|  | : |  |
| Appellant | : | No. 1720 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 17, 2019
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0002274-2018

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY OLSON, J.:                     FILED DECEMBER 18, 2020

Appellant, William Edward Shaw, appeals from the judgment of sentence entered October 17, 2019, following his guilty pleas entered in the Court of Common Pleas of Washington County.  We affirm.

The facts and procedural history of this case are as follows.  By way of criminal complaint, the Commonwealth charged Appellant with the following offenses.   At CP-63-CR-0000939-2018 (hereinafter, Docket Number 939-2018), the Commonwealth charged Appellant with making terroristic threats.    At CP-63-CR-0002460-2018 (hereinafter, Docket Number 2460-2018), the Commonwealth charged Appellant with one count of possession with intent to deliver (PWID) heroin.   At CP-63-CR-2284-2018 (hereinafter, Docket Number 2284-2018), the Commonwealth charged Appellant with PWID heroin; PWID cocaine; PWID marijuana; person not to possess a firearm; carrying a firearm without a license; and possession of drug paraphernalia.   At CP-63-CR-2274-2018 (hereinafter, Docket Number

- 2 -

2274-2018), the Commonwealth charged Appellant with one count of PWID heroin.

Appellant was set to proceed to a jury trial for Docket Number 2460-2018, Docket Number 2274-2018, and Docket Number 2284-2018, but Appellant requested a non-jury trial for Docket Number 939-2018. The trials for the aforementioned cases were set to commence in July 2019. On July 10, 2019, however, the trial court convened a pre-trial conference during which Appellant entered an open plea in the four underlying cases presently on appeal. The trial court accurately summarized the events of the guilty plea hearing as follows.

> On July 1[0], 2019, the [trial c]ourt held an open plea hearing on all four of Appellant's cases. Present at the hearing were [Adam] Yarussi [("Attorney Yarussi")], who represented Appellant, and [Rachel] Wheeler [("Attorney Wheeler")], who represented the Commonwealth. Initially, [Attorney] Yarussi informed the [trial c]ourt that [Attorney Wheeler offered Appellant a global plea and, as such,] Appellant [considered] . . . taking an open plea[] or the plea [agreement Attorney] Wheeler offered[.] At that time, [Attorney] Wheeler put the global plea offer on the record[.]
>
> ***
>
> [In sum,] the aggregate sentence offered by the Commonwealth was 101 months to 202 months' [incarceration].
>
> Thereafter, [Attorney] Yarussi stated that Appellant wanted to know if the [trial c]ourt would "ever go below the range [that] [Attorney] Wheeler offered?" The [trial c]ourt stated that it could not answer a question that way, indicating that the [c]ourt [needed] to review the pre[-]sentence investigation report. [] Appellant [then] stated that he was going to take the open plea, however, he was confused about what an open plea would mean for the non-jury trial that was originally scheduled for [D]ocket [N]umber 939[-]2018. Appellant stated, "I was told . . . that if I

do [not] take a plea on everything then I [am] going to get the maximum [sentence] on everything." Immediately after Appellant's statement, [Attorney] Yarussi reassured Appellant that "[] that [was] not true." Thereafter, [Attorney] Wheeler, as well as the [c]ourt, informed Appellant that, if he wanted, he could enter into an open plea at [the remaining dockets,] and still go forward with a non-jury trial at [D]ocket [N]umber 939[-]2018. To clarify any further confusion, the [trial c]ourt engaged in the following [dialogue] with Appellant:

> [The court]: I would sentence you on these three cases, and then it depends if you [are] convicted or not - acquitted of terroristic threats. We [would] have to wait and see what happens with that. If you [are] convicted, then I would sentence you on that as well. If you [are] acquitted, there would be no sentence. Do you understand?
>
> [Appellant]: Yes, ma'am:
>
> [The court]: So if you [would] really like to have [a] non-jury trial [at Docket Number 939-2018] and just enter an open plea [at the remaining dockets], you can. There [is] just no guarantee of what the sentence will be.
>
> [Appellant]: No. I understand, ma'am. I understand. Okay, I'll do an open plea on all of them.
>
> [The court]: Okay.
>
> [Appellant]: Even the [non-jury] trial, on all four charges I'll do the open plea to save time because -
>
> [The court]: So you wish to enter an open plea to . . . all four cases?
>
> [Appellant]: Yes, ma'am. Yes, ma'am.
>
> [The court]: Okay. So you do not wish to have your non-jury trial on -
>
> [Appellant]: No, ma'am. […]
>
> [The court]: You [are] going to plead guilty to [terroristic threats]?
>
> [Appellant]: I'm going to - yes, open plea to all of them. Yes, ma'am.

>After Appellant made his decision to take an open plea on all four cases, the [c]ourt took a brief recess for Appellant to complete an extensive written colloquy.

Trial Court Opinion, 2/4/20, at 10-12 (internal citations omitted).

Eventually, the court resumed the hearing and Appellant pled guilty to the following: at Docket Number 939-2018, terroristic threats;[1] at Docket Number 2460-2018, PWID heroin;[2] at Docket Number 2274-2018, PWID heroin; and at Docket Number 2284-2018, PWID heroin, PWID marijuana, and PWID cocaine. Thereafter,

>the [trial c]ourt underwent an oral colloquy with Appellant to ensure [that he] was entering the open plea voluntarily, knowingly, and intelligently. Specifically, the [trial c]ourt asked if Appellant signed the written colloquy voluntarily, wherein Appellant answered in the affirmative.

Id. at 12.

The Commonwealth then provided the trial court with a brief explanation of the evidence it would have presented at trial for each of Appellant's four cases. Attorney Wheeler stated:

>At [Docket] Number 939[-]2018, on October 5, 2017, Latoya Shaw, the victim, came to the Washington [County] Police Department to report that she received a threatening letter from her husband[, Appellant.] She stated that [Appellant] was currently housed at SCI Smithfield. She showed the officers a letter postmarked [October 3, 2017,] from SCI Smithfield from [Appellant] which she received, and it contained several threats that were made to her including, quote, you and that African are

_____

[1] 18 Pa.C.S.A. § 2706(a)(1).

[2] 35 P.S. § 780-113(a)(30).

dead, b[****], end quote. Several other threats were made in that letter, and the police filed charges.

At [Docket] Number 2460[-2018], on January 27, 2016, officers met with a confidential informant who indicated [he/she] could purchase heroin from [Appellant.] A controlled buy was set up using [Appellant's] cell[ular] phone number. An individual answered the [cellular] phone and set up to purchase heroin from [Appellant]. [Appellant] did arrive at the purchase location and sold to the [confidential informant] a quantity of heroin. And this was in the presence and under the surveillance of other troopers.

At [Docket] Number 2274[-2018], on December 3, 2015, officers met with a confidential informant who indicated [he/she] could purchase heroin from [Appellant]. Again, a controlled purchase was set up. A call was made to [Appellant] in the presence of officers to conduct the controlled purchase. [Appellant] did arrive at the buy location and sold a quantity of heroin to the confidential informant with and under the surveillance of troopers.

Finally, at [Docket] Number 2284[-2018], on March 3, 2016, troopers were called to the Americas Best motel for the report of a domestic with a firearm. When [the] officers arrived, they observed a quantity of a white powered substance, some of the clear plastic baggies contained suspected heroin. They also observed an individual there who had an injury to her face. Upon further investigation[,] officers came to learn that [Appellant] had been present in the hotel room with two women and a child, that a domestic had occurred in which [Appellant] struck the victim, he then fled the scene in a vehicle. Officers conducted an investigation of the vehicle, discovered numerous bags of heroin, a bag of cocaine, a firearm including a magazine as well, and several [cellular] phones, additional substances as well including marijuana. Further investigation revealed that [Appellant] was still fleeing and he eventually was stopped in Bedford County[, Pennsylvania] and within his vehicle were also located the [identifications] of the two females that were in the hotel room.

[Deoxyribonucleic Acid (DNA)] – identification [was] conducted in this case, Your Honor. All of the controlled substances were determined to be what they are, and the DNA on the firearms matched [Appellant's] in this case. Officers filed the charges as to all of these substances and items located within the motel room and within the vehicle.

N.T. Guilty Plea Hearing, 7/10/19, at 13-15. Following the Commonwealth's proffer,

> the [trial c]ourt asked Appellant if he was "[w]illing to waive [his] right to a jury and non-jury trial that he was scheduled for and enter an open plea." Again, Appellant answered in the affirmative. Thereafter, the [trial c]ourt accepted Appellant's open plea for all four cases.

Trial Court Opinion, 2/4/20, at 12.

On July 18, 2019, shortly after entering his guilty pleas but before sentencing, Appellant filed a motion to withdraw his guilty plea. In his motion, Appellant stated that, at the time he entered his plea, Appellant felt "intimidated by [] Attorney [Wheeler]" and he "did not provide counsel with one of the four grounds to withdraw the guilty plea." Appellant's Motion to Withdraw Guilty Plea, 7/18/19, at 3. That same day, the trial court denied Appellant's motion. Thereafter, Appellant filed a motion for reconsideration. The trial court granted reconsideration on July 30, 2019, and scheduled an evidentiary hearing for August 19, 2019.

During the evidentiary hearing, Appellant claimed that he wanted to withdraw his guilty plea because he "was pressured to . . . accept the open plea, with threats from [Attorney] Wheeler." N.T. Evidentiary Hearing, 8/19/19, at 11. Specifically, Appellant [] explained that,

> [b]efore your Honor entered the courtroom, and we were on record, [Attorney Wheeler] came over to me, and she approached me, with [Attorney Yarussi]. And [Attorney Wheeler] told me that if I do [not] take this deal, that she was going to destroy me if I go to trial, get me [ten] to 20 years, re[-]open [a different case and charge me with]

aggravated assault . . . and get me [ten] to 20 on that, too, which turns into 20 to 40. And then get me a gun enhancement for a gun charge that was dismissed, that . . . I was no longer charged for, and tells me that I could end up doing 40 or 50 years.

That did [not] make sense to me, and it scared me. So I felt [] that I would prefer to go in front of the judge, because [Attorney Yarussi] told me I got a better chance, if I take this deal, and she w[ill not] be able . . . [to] do these things to me. So[,] I got scared, and I accepted the open plea.

[In] less than 24 hours, I went right back, I thought about it, and I realized that is not what I wanted to do. And I was willing to plead guilty to the crimes that I committed, and not to the crimes I did [not], and I wanted to go to trial for them.

I felt intimidated, bullied to take that deal. And just I do [not] want to take that deal, man. I do [not] want to take the deal on that.

Id. at 12-13. Thereafter, the trial court inquired as to "which cases [Appellant was] asserting [his] innocence on[.]" Id. at 13. Appellant then stated that he was innocent of the charges at Docket 2284-2018. Id. Ultimately, at the close of the hearing and in an order dated August 21, 2019, the trial court denied Appellant's motion to withdraw his guilty plea. Id. at 39; see also Trial Court Order, 8/21/19, at 1. On October 17, 2019, the trial court sentenced Appellant to an aggregate term of 15 to 30 years' incarceration. This timely appeal followed.[3]

_____

[3] On November 15, 2019, Appellant filed four separate notices of appeal at each of the four trial court dockets in accordance with our Supreme Court's decision in Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018). On

Appellant raises the follow issue on appeal:

Whether the trial court erred in denying [Appellant's] pre[-]sentence request to withdraw his guilty pleas where fair and just reasons existed to permit their withdrawal, i.e., [Appellant] felt bullied into entering the guilty pleas and asserted a colorable claim of innocence as to one of the cases he faced, and the Commonwealth would not be substantially prejudiced by the pleas' withdrawal?

Appellant's Brief at 6.

Appellant argues that the trial court erred in denying his motion to withdraw his guilty plea. "We review a trial court's ruling on a [pre-]sentence motion to withdraw a guilty plea for an abuse of discretion." Commonwealth v. Islas, 156 A.3d 1185, 1187 (Pa. Super. 2017) (citation omitted). Pennsylvania Rule of Criminal Procedure 591(A) provides that, "[a]t any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, sua sponte, the withdrawal of a plea of guilty or nolo contendere and the substitution of a plea of not guilty." Pa.R.Crim.P. 591(A).

"Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made before sentencing should be liberally allowed." Commonwealth v. Kpou, 153 A.3d 1020, 1022

_____

November 19, 2019, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). After securing an extension, Appellant timely complied. This Court consolidated Appellant's appeals sua sponte by order dated January 2, 2020. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on February 4, 2020.

(Pa. Super. 2016) (cleaned up). "In determining whether to grant a pre[-]sentence motion for withdrawal of a guilty plea, the test to be applied by the trial courts is fairness and justice." Commonwealth v. Elia, 83 A.3d 254, 262 (Pa. Super. 2013) (cleaned up). Therefore, if the defendant provides a fair and just reason for wishing to withdraw his plea, the trial court should grant it unless it would substantially prejudice the Commonwealth. Commonwealth v. Carrasquillo, 115 A.3d 1284, 1287 (Pa. 2015) (citation omitted).

Notably,

In [Carrasquillo, supra], our Supreme Court provided additional guidance as to the proper exercise of a court's discretion in ruling on pre-sentence motions to withdraw a plea. While reaffirming the "liberal allowance" standard, the Court acknowledged that its previous application of that standard had "lent the [false] impression that [the] Court had required acceptance of a bare assertion of innocence as a fair-and-just-reason" for withdrawal and led to a "legitimate perception of a per se rule" arising from the Court's prior decisions. Id. at 1292. In an attempt to clarify the standard, the Carrasquillo Court held that "a bare assertion of innocence is not, in and of itself, a sufficient reason to require a court to grant" a pre-sentence motion to withdraw. Id. at 1285. Rather, the Court concluded that

> a defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for pre[-]sentence withdrawal of a plea. More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts.

Id. at 1292. Thus, the Carrasquillo Court established that trial courts possess discretion to assess the plausibility of a defendant's claim of innocence. In doing so, "both the timing and the nature of the innocence claim, along with the relationship of that claim to the strength of the government's evidence, are relevant." Islas, 156 A.3d at 1191.

> Consistent with the well-established standards governing trial court discretion, it is important that appellate courts honor trial courts' discretion in these matters, as trial courts are in the unique position to assess the credibility of claims of innocence and measure, under the circumstances, whether defendants have made sincere and colorable claims that permitting withdrawal of their pleas would promote fairness and justice.

Commonwealth v. Norton, 201 A.3d 112, 121 (Pa. 2019).

Commonwealth v. Metheny, 2020 WL 692174, at *2-3 (Pa. Super. Feb. 11, 2020) (unpublished memorandum).

Herein, Appellant argues that there were two fair and just reasons for permitting him to withdraw his guilty plea. Specifically, Appellant claims that he "felt intimated and pressured" into pleading guilty by Attorney Wheeler. Appellant's Brief at 30. In addition, Appellant argues that he made a claim of actual innocence. Id. at 30-31.

Upon review, we conclude that Appellant's claim that he was "intimated and pressured" into pleading guilty is belied by the record. Id. at 30. First, it must be noted that Appellant entered an open plea. He did not, therefore, accept the negotiated plea offered by the Commonwealth, which is the plea Appellant cited during the evidentiary hearing. In other words, Appellant did not accede to the sentencing terms that he claimed, at the plea withdrawal hearing, he was pressured to accept. Second, as noted by the trial court,

"Appellant completed an extensive written colloquy where he indicated, inter alia, that no one forced him to enter the plea, that the plea was of his own free will, and that no threats were made to him to enter the plea." Trial Court Opinion, 2/4/20, at 20. Third, the trial court conducted an oral colloquy following Appellant's completion of the written colloquy. In so doing, the trial court specifically asked Appellant if "anyone promised [him] anything or threatened [him] in any way to plead guilty today?" N.T. Guilty Plea Hearing, 7/10/19, at 12. Appellant responded "[n]o, ma'am." Id. Lastly, during the August 19, 2019 evidentiary hearing, Attorney Wheeler made the following statement:

> [On July 10, 2019, during negotiations] at all times, [Attorney] Yarussi was present if I spoke with [Appellant].
>
> We did discuss plea options. We did discuss the strengths of the case. I absolutely did indicate that I believed I would win at trial. I was making this offer as a final offer, just to try to settle things before trial to save numerous individuals from coming back to [c]ourt. So that was stated.
>
> And I did indicate that if he did not accept that offer, th[e]n we would just proceed to trial in all of the cases, and that [there] would no longer be [an] offer.
>
> * * *
>
> But my point in pointing all that out, your Honor, is that it was – for [Appellant] to indicate that that day, although there were numerous people in the courtroom, he never indicated he was feeling intimidated or threatened. He made a decision, after lengthy discussions with myself [and] with [Attorney] Yarussi[.]

N.T. Evidentiary Hearing, 8/19/19, at 34. Attorney Wheeler's statement was bolstered by the testimony of a fellow District Attorney, Nathan Michaux, who

was present in the courtroom on July 10, 2019. Specifically, Attorney Michaux

stated, in response to Attorney Wheeler's questions, the following:

> [Attorney Wheeler]: Did you, at any point in time throughout the entire morning, observe or hear anything regarding any coercive discussion between myself and [Appellant], or his attorney and [Appellant]?
>
> [Attorney Michaux]: Not from what I heard. From what I heard, it sounded like plea negotiations to me. There were discussions about potential ranges of sentences on the various charges. I believe there might have been a discussion on whether it could potentially merge or not. Also, discussions about enhancement and relative strengths and weaknesses of the case, which ones he could expect to lose if he went to trial, and which ones he had an argument on.
>
> I do recall Attorney Yarussi making those comments to him. Other than that, I mean, it did [not] strike my notice more than that, because it just sounded like basic[] plea negotiations at that point.
>
> [Attorney Wheeler]: Did [Appellant] ever express to you, or did you ever hear him express to anyone a feeling of being intimidated that morning, to anyone, yourself, the deputies or anyone else?
>
> [Attorney Michaux]: No. Each time I heard [Appellant] speak, he seemed normal. He was actively engaged in the conversations. Many times he offered alternatives, alternative charges, alternative sentences, that he could possibly receive if he were to plead. So to me, it seemed like he was trying to negotiate with the Commonwealth for a better sentence.

Id. at 30-31. Thereafter, Attorney Yarussi stated that:

> everything that [Attorney] Wheeler stated on the record[] is accurate. [Appellant] did call her over. It was [not] that she just came over. He wanted to talk to her candidly.

Id. at 37.

Based upon all of the foregoing, the trial court concluded that "Appellant

entered into an open plea of guilty voluntarily, knowingly, and intelligently,

without being threatened [by] the Commonwealth." Trial Court Opinion, 2/4/20, at 20. It is clear that the trial court credited the testimony of Attorney Wheeler, Attorney Michaux, and Attorney Yarussi and rejected the statements offered by Appellant. This Court will only overturn a trial court's credibility determinations if they are contradicted by the record. See Commonwealth v. Brown, 23 A.23d 544, 551 (Pa. Super. 2011). In this case, the trial court's credibility determination were rational, reasoned, and supported by the record. Hence, the trial court properly exercised its discretion in finding that Appellant was not pressured into pleading guilty.

Next, Appellant argues that he made a plausible claim of innocence. The trial court, however, concluded that Appellant made nothing more than a "bare assertion of innocence" which "wholly undermined its plausibility, particularly in light of the Commonwealth's evidentiary proffer at the plea hearing and the hearing to withdraw Appellant's guilty plea." Trial Court Opinion, 2/4/20, at 21. Upon review of the record, we discern no abuse of discretion on the part of the trial court in reaching these conclusions.

It is apparent that, in this case, Appellant's actual innocence was not the motivating factor in seeking to withdraw his guilty pleas. Indeed, Appellant did not assert his innocence in his written motion to withdraw his guilty plea. Instead, Appellant claimed that felt "intimidated by [] Attorney [Wheeler]" and elusively stated that he "did not provide counsel with one of the four grounds to withdraw the guilty plea." Appellant's Motion to Withdraw

Guilty Plea, 7/18/19, at 3.[4]  In fact, Appellant did not make a claim of actual innocence until he was prompted by the trial court during the August 19, 2019 evidentiary hearing.  Specifically, after Appellant alleged that he pled guilty because of undue pressure by the Commonwealth, the trial court inquired as to "which cases [Appellant was] asserting [his] innocence on[.]"  N.T. Evidentiary hearing, 8/19/19 at 13.  Appellant then stated that he was innocent of the charges at Docket 2284-2018.  Id. at 13.  He stated:

> I [am] saying I was not guilty of that, and I had the proof.  And I told you that [Attorney] Wheeler also was in possession of the telephone conversation with the victim, the people [at the scene of the crime] that said that that was their stuff.

Id.  Thus, Appellant only asserted his innocence with respect to one of the four cases to which he pled guilty.  In an attempt to state a colorable claim of innocence, Appellant offhandedly alleged that the Commonwealth had, in its possession, exculpatory evidence in the form of a telephone conversation with the victim.  As the trial court stated, Appellant's claim was not plausible in light of the Commonwealth's evidentiary proffer during the July 10, 2019 hearing.  See N.T. Guilty Plea Hearing, 7/10/19, at 15 (explaining that the

---

[4] We also note that Appellant did not make a specific claim of innocence in his Rule 1925(b) statement.  In fact, Appellant simply contended that he "presented a fair and just reason for withdrawing his guilty plea through evidence that said plea was entered only after pressure and threats from the Commonwealth."  Appellant's Concise Statement, 1/8/20, at *2 (un-paginated).  Thus, this further supports our conclusion that Appellant's claim of actual innocence was nothing more than an afterthought.

- 15 -

Commonwealth would present evidence that the police searched a vehicle that had numerous bags of heroin, cocaine, marijuana, and a firearm inside, as well as the fact that the firearm contained DNA that matched Appellant). Accordingly, we conclude that the trial court acted within its discretion in denying Appellant's pre-sentence motion to withdraw his guilty plea.[5]

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2020

_____

[5] Appellant claims that the trial court erred in determining that "the Commonwealth would have been substantially prejudiced had the case went to trial." Appellant's Brief at 37, citing Trial Court Opinion, 2/4/20, at 21. "In light of Appellant's failure to demonstrate a fair and just reason to support the withdrawal of his plea, we need not examine the prejudice suffered by the Commonwealth." Commonwealth v. Johnson-Daniels, 167 A.3d 17, 25 n. 8 (Pa. Super. 2017); see also Carrasquillo, 115 A.3d at 1291-1292 (explaining that "any demonstration by a defendant of a fair and just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth").