J-A13013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL MARION | : | |
| | : | |
| Appellant | : | No. 1658 EDA 2021 |

Appeal from the Judgment of Sentence Entered July 16, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007778-2019

BEFORE: OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY OLSON, J.: **FILED JUNE 16, 2022**

Appellant, Michael Marion, appeals from the judgment of sentence entered on July 16, 2021. We affirm.

On November 5, 2020, Appellant entered an open guilty plea to a number of crimes, including: unlawful contact with a minor, unlawful restraint, endangering the welfare of children, corruption of minors, indecent exposure, indecent assault, and attempted rape.[1] During the guilty plea hearing, Appellant agreed that the following facts supported his plea:

> On or about July 16, 2019, in the City [] of Philadelphia, [the victim, A.W., (hereinafter "the Victim")] was visiting her biological father, [Appellant], at his apartment. She was 14 years old at the time.

---

[1] 18 Pa.C.S.A. §§ 6318(a)(1), 2902(c)(1), 4304(a)(1), 6301(a)(1)(i), 3127(a), 3126(a)(8), and 901(a), respectively.

During the afternoon to evening hours, [Appellant] invited [the Victim] into his bedroom to watch a movie. At that point, while [the Victim] was [lying] in [Appellant's] bed, [Appellant] began massaging [the Victim's] back. Then he instructed [the Victim] to turn[] over and face him. He then kissed her on the mouth. After kissing her on the mouth, [Appellant] told [the Victim] he had been waiting to do this for a long time.

He then maneuvered [the Victim's] body into an upright seated position, took off her shirt and took off her bra. He then licked her breasts. At this point, [Appellant] then [straddled the Victim's] body so that he was sitting on her chest.

At this point his clothes were also off and his [erect penis] was mere centimeters from [the Victim's] face.

[Appellant] then maneuvered his penis down to [the Victim's] vagina while her underwear was still on and began rubbing it against her vagina. [Appellant] then grabbed [the Victim's] hand, brought her hand to his penis where she detected a liquid substance.

[The Victim] advised [Appellant] that she had to use the bathroom. She went to the bathroom and began recording on her cell phone. On the video recordings she indicated that [Appellant] had just sexually assaulted her.

She exited the bathroom shortly thereafter with the video still recording. There, she capture[d Appellant] with his clothes off, and he [said]: What are you doing? And then apologize[d. The Victim] scream[ed] at him that he is sick.

She then [fled Appellant's] residence without shoes on in the pouring rain, begging strangers to call the police. One stranger did call the police. [The Victim] ultimately called the police later.

When [the] police responded, [Appellant] was no longer present. He had fled the residence.

Ultimately, [the] police were able to come in contact with [Appellant] when his sister responded to the scene. Police

made contact with [Appellant] and advised him to return. He said he did not want to return because he was afraid of being arrested because he was on probation. They indicated that it would be in his best interest to return.

Ultimately, a DNA sample was recovered from [the Victim's] breasts revealing the presence of [Appellant's] saliva.

N.T. Guilty Plea Hearing, 11/5/20, at 8-10.

During the hearing, the trial court inquired as to whether Appellant's plea was knowing, intelligent, and voluntary. In relevant part, the trial court's examination occurred as follows:

[Trial Court]: How old are you, sir?

[Appellant]: [48].

[Trial Court]: How far did you go in school?

[Appellant]: I just got my GED. I'm actually a pest control agent. I've been doing pest control for 17 years.

[Trial Court]: I'm just going to ask you to keep your voice up so that the --

[Appellant]: Oh, I'm sorry. I'm deaf in this ear. So I'm afraid I'm going to talk [too] loud. (Indicating.)

[Trial Court]: I think under these circumstances that's unlikely. So go ahead.

Have you ever been or are you currently being treated for any mental illness?

[Appellant]: Yeah, I just found out recently that I have [post-traumatic stress disorder ("PTSD")]. I just found out that in June. When I five years old, my aunt tried to kill me, and I'd been suffering from that essentially since I was five years old. She tried to stab me to death, and I have been dealing with that all of my life.

So I didn't know that until I was arrested and they evaluated me in the jail in the prison system.

[Trial Court]: Are you being currently treated for any mental illness?

[Appellant]: I am trying to get it. The thing is [coronavirus] is not, they're not allowing me to get it because they can't have so many people contact. They got to set up in prison system now. I was getting it earlier. I was getting it before the [coronavirus].

[Trial Court]: So you're currently not being treated?

[Appellant]: No, not now. For safety reasons, I was moved to a different jail because there was an attempt on my life inside the prison system. I was at [Philadelphia Industrial Correction Center] but now they moved me to [Curran-Fromhold Correctional Facility] for security reasons because there was an attempt on my life.

[Trial Court]: Are you taking any prescription drugs today?

[Appellant]: No.

[Trial Court]: Are you under the influence of any drugs or alcohol today?

[Appellant]: No, I'm not.

[Trial Court]: Is there anything that would prevent you from understanding what's happening here in [court] today, sir?

[Appellant]: Other than I'm deaf. I'm pretty much deaf, but other than that I'm hearing impaired. I have a hearing aids but I don't have them because they threw them out in a shake down[.]

[Trial Court]: Have you been able to understand everything that's been said?

[Appellant]: As far as -- yeah. I can hear and read lips at the same time.

- 4 -

[Trial Court]: And you were able to hear everything that [the Assistant District Attorney] said and everything that [the Victim] said[?]

[Appellant]: I heard most of it. I think I heard most of it. I think I did. I hope I did.

[Trial Court]: I'm going to rely on the representation of your attorney who stated that you understood the recitation of facts that [the Assistant District Attorney] presented and you did not wish to add anything to it. And you agreed with the recitation of facts[.]

. . .

[Appellant's Counsel]: To that point Your Honor, what I was saying is [Appellant] in our discussion without getting into the details of it was able to point out specific things that [the Assistant District Attorney] said on the record. I'm very satisfied that he understood everything the Commonwealth said.

[Trial Court]: Thank you very much, [Appellant's Counsel].

N.T. Guilty Plea Hearing, 11/5/20, at 15-19.

The trial court accepted Appellant's plea and scheduled sentencing for a later date.

Appellant's sentencing occurred on June 25, 2021 and July 16, 2021.[2] During the June 25, 2021 proceeding, Appellant orally moved to withdraw his

_____

[2] Appellant failed to ensure that the certified record included the transcript of the July 16, 2021 sentencing hearing and our review of the certified record does not demonstrate that Appellant ordered or paid for this transcript. Further, our independent attempts to obtain a copy of the July 16, 2021 sentencing hearing failed.  As we have explained:

> The fundamental tool for appellate review is the official record of
> the events that occurred in the trial court. To ensure that an

*(Footnote Continued Next Page)*

guilty plea. **See** N.T. Sentencing, 6/25/21, at 19. As Appellant's attorney explained during the hearing, Appellant wished to withdraw his guilty plea because: "he didn't understand, because of his mental strain, because of the time in jail, what was happening at his guilty plea." **Id.** at 34. The trial court denied Appellant's motion and continued the sentencing hearing until July 16,

---

appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent – a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record.

. . .

Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty.

. . .

With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P.1911(a). When the appellant . . . fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review.

**Commonwealth v. Preston**, 904 A.2d 1, 6-7 (Pa. Super. 2006) (quotation marks and citations omitted).

2021. At that time, the trial court sentenced Appellant to serve an aggregate term of seven-and-one-half to 15 years in prison, followed by 11 years of probation, for his convictions. *See* Trial Court Opinion, 10/5/21, at 5. Appellant did not file a post-sentence motion; however, Appellant filed a timely notice of appeal from his judgment of sentence. Appellant raises two issues to this Court:

> 1. Whether the trial court's acceptance of [Appellant's] guilty plea constitutes manifest injustice because [Appellant's] diminished mental health condition rendered him incapable of entering a knowing, intelligent, and voluntary guilty plea[?]
>
> 2. Whether the sentencing court abused [its] discretion by imposing a sentence that was not based upon the gravity of the violation, the extent of [Appellant's] record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors . . . [?]

Appellant's Brief at 8.

First, Appellant claims that the trial court erred when it denied his oral motion to withdraw his guilty plea. "We review a trial court's ruling on a [pre-]sentence motion to withdraw a guilty plea for an abuse of discretion." *Commonwealth v. Islas*, 156 A.3d 1185, 1187 (Pa. Super. 2017) (citations omitted). Pennsylvania Rule of Criminal Procedure 591(A) provides that, "[a]t any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty." Pa.R.Crim.P. 591(A).

"Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made before sentencing should be liberally allowed." *Commonwealth v. Kpou*, 153 A.3d 1020, 1022 (Pa. Super. 2016) (quotation marks, citations, and corrections omitted). "[I]n determining whether to grant a pre[-]sentence motion for withdrawal of a guilty plea, the test to be applied by the trial courts is fairness and justice." *Commonwealth v. Elia*, 83 A.3d 254, 262 (Pa. Super. 2013) (quotation marks and citations omitted). Therefore, if the defendant provides a fair and just reason for wishing to withdraw his plea, the trial court should grant it unless it would substantially prejudice the Commonwealth. *Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1292 (Pa. 2015).

On appeal, Appellant claims that his plea was not knowingly, intelligently, and voluntarily entered because, during the plea hearing, he "presented evidence of his diagnosis of [PTSD] and adjustment disorder with anxiety." Appellant's Brief at 14. According to Appellant, these disorders made it so that he "did not understand the charges to which he had entered the guilty plea." *Id.* This claim fails. As the trial court explained:

> At the plea hearing of November 5, 2020, [Appellant] agreed to the facts as recited by the Commonwealth. The [trial] court received a written guilty plea colloquy signed by [Appellant], listing the charges and acknowledging that [Appellant] understood the nature of the charges, that there was a factual basis for the plea, that [Appellant] understood he had a right to a trial by jury, that he was presumed innocent until proven guilty, that he was aware of the range of sentences and/or fines for which he was charged, and that the judge was not bound by the terms of the agreement. The

[trial] court thereafter [extensively questioned Appellant regarding his mental health and his ability to understand the charges and the proceedings].

. . .

The court's questioning established that [Appellant's] guilty plea was knowing, voluntary, and intelligent. [Appellant] testified he was not taking prescription medication, or under the influence of any alcohol or drugs. [Appellant] stated that he understood the nature of the charges against him; that his attorney reviewed the written guilty plea colloquy form with him; that he signed the guilty plea form; that he knew he could be sentenced up to 87 years and fined up to $110,000[.00]; that he was giving up his right to a jury trial; and that the plea would limit his appellate rights. While [Appellant] noted he was deaf in one ear, he responded to the [trial] court's questioning with little difficulty. [Appellant's] counsel further confirmed that [Appellant] understood the factual basis and events at the plea hearing, and stated his belief that [Appellant] understood.

. . .

[Appellant's] assertion that he could not understand counsel at the plea hearing is belied by the record, which does not reflect that [Appellant] expressed any difficulty, and that [Appellant's] counsel confirmed that [Appellant] understood the proceedings.

Trial Court Opinion, 10/5/21, at 7-12 (citations omitted).

The trial court's factual findings are supported by the record and its denial of Appellant's oral motion to withdraw the guilty plea was within its discretion. Therefore, Appellant's first claim on appeal fails.

Next, Appellant claims that the trial court abused its discretion by imposing a manifestly excessive sentence. This claim is waived, as Appellant did not raise his claim at sentencing or in a post-sentence motion. *See* Pa.R.Crim.P. 720; Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are

waived and cannot be raised for the first time on appeal"); ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa. Super. 2013) ("issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived").

Judgment of sentence affirmed.  Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>6/16/2022</u>