J-A29015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DEANGELO JARRON TROOP JR. | : | |
| | : | |
| Appellant | : | No. 21 WDA 2025 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002218-2022

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED:  January 26, 2026**

Appellant, Deangelo Jarron Troop, Jr., appeals from the December 4, 2023 judgment of sentence entered in the Erie County Court of Common Pleas following Appellant's guilty plea to Murder of the First Degree and related crimes.  Appellant challenges the trial court's denial of his request to withdraw his guilty plea prior to sentencing and claims that the court abused its discretion in permitting expert testimony during sentencing and in imposing an aggregate sentence of 55 years to life plus 20 years in prison for a crime committed when he was 15 years old .  After careful consideration, we affirm.

The trial court set forth the following facts regarding the December 5, 2020 crime in Erie:

> Appellant[]and a co-defendant, were members of a local gang known as "The Five."  After being "disrespected" by a member of another local gang known as "Stack That Bread" or STB, Appellant and his co-defendant borrowed the car of Appellant's uncle in order to hunt down the rival member.  Appellant and the co-

defendant secured guns and drove around STB territory. Appellant spotted the gang member, [T.G.], walking on a sidewalk with the 13[-]year[-]old victim in this matter, [K.G.]. Appellant and the co-defendant exited the vehicle and began shooting. [T.G.] was able to jump a fence and escape. [K.G.], due to his size, struggled and was unable to clear the fence in time to escape. [K.G.] eventually made it over the fence just as Appellant closed the space and Appellant fired a close shot at [K.G.'s] head. Video surveillance captured the entire encounter, from Appellant firing his weapon as he exited the vehicle to [K.G.] falling and never returning to his feet.

Trial Ct. Op., 4/16/25, at 1-2 (citations omitted).

On October 9, 2023, Appellant pleaded guilty to Murder of the First Degree, Aggravated Assault, Firearms not to be Carried Without a License, and Criminal Conspiracy (Homicide),[1] and the Commonwealth *nolle prossed* several other charges.

Prior to sentencing and while still represented by plea counsel, Appellant sent *pro se* a letter to the trial court stating in full the following:

Too [sic]: Judge Trucilla/Court of Common Pleas
From: Deangelo Troop Jr   Wed, October 18

I would like too [sic] withdraw my open plea deal to first degree murder and proceed my case to A trail [sic] court.

Appellant's Letter to Trial Court, dated 10/18/23. The court docketed the *pro se* letter and forwarded it to counsel.

On November 14, 2023, the court held a hearing at which one of Appellant's plea counsel, Attorney Douglas H. Sullivan, represented Appellant. Appellant sought to withdraw his plea, claiming that when he arrived for jury

---

[1] 18 Pa.C.S. § 2501(a), 2702(a)(1), 6106, and 903, respectively.

- 2 -

selection on October 9, 2023, he had not expected to plead guilty; however, his other plea counsel, Attorney Eric V. Hackwelder, told him to "follow [his] lead," and "basically walked him up to accept a guilty plea in lieu of proceeding forward to trial." N.T. Rule to Show Cause Hr'g, 11/14/23, at 9. Appellant also "indicated that he felt that his outcome would be better if he went forward with trial[.]" *Id.* His counsel, however, expressly stated that they were not filing a motion to withdraw "due to the status of the law." *Id.* at 12. Finding no basis to withdraw the plea, the court denied Appellant's request.

On December 4, 2023, the trial court presided over a sentencing hearing. Following Appellant's allocution, the court questioned Appellant regarding his actions and gang affiliation, many of which Appellant declined to answer.

Relevantly, at the sentencing hearing, the Commonwealth offered the testimony of Erie Police Officer Nick Strauch as an expert in Erie gang culture. Defense counsel objected, arguing that the testimony was duplicative and not relevant because Appellant had conceded in his plea to the application of the gang sentencing enhancement. The court permitted the testimony, opining as follows:

> [I]f it's superfluous or . . . duplicative, I will make that decision and give it whatever weight or gravity I think, but it does fill in some necessary components I think because of the questions I just asked, and I think it gives further insight and perspective to the catalyst of this shooting and the involvement of this group or gang and the motivating factor that led to the killing of [K.G.].

N.T. Sent., 12/4/23, at 41. Officer Strauch provided extensive testimony regarding the two rival gangs and Appellant's and his co-defendant's roles as "core members" of their gang. *Id.* at 52-53.

During the sentencing hearing, the court emphasized the need to send "some message that this cannot happen[,]" and stated that "this has to stop." *Id.* at 94, 105, 110. After addressing the sentencing factors, including those relevant to juveniles, the court sentenced Appellant to 50 years to life in prison for Murder of the First Degree, a consecutive sentence of 5 to 20 years imprisonment for Aggravated Assault, and concurrent terms of imprisonment of 2 to 4 years for Firearms Not to Be Carried without a License and 20 to 40 years for Conspiracy. Appellant acknowledges that these sentences are within the standard range of the sentencing guidelines.[2] Appellant's Br. at 21-23.

Appellant filed post-sentence motions, which the trial court denied on December 15, 2023.

Following reinstatement of Appellant's direct appeal rights *nunc pro tunc*, Appellant filed a counseled notice of appeal on January 3, 2025. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

---

[2] Appellant concedes that his sentencing counsel waived a challenge to the imposition of the deadly weapons enhancement, which does not apply to individuals who are sentenced for murder committed before turning 18. Appellant's Br. at 22 n.3; *see* 204 Pa. Code § 303.10(a)(1). With the enhancement, Appellant states that the standard range for murder was 438 months, or 36½ years, to life in prison. Appellant's Br. at 21-22.

1. Did the trial court commit an abuse of discretion when it denied Appellant's request to withdraw his guilty plea prior to sentencing—a request that should be liberally allowed—as Appellant presented and/or attempted to present a fair and just reason for the withdrawal and the Commonwealth did not establish substantial prejudice?

2. Did the trial court abuse its discretion by ordering Appellant, who was fifteen years old at the time of the commission of the crimes, to serve a manifestly excessive term of 55 years to life plus twenty years' imprisonment, as this sentence reveals that the trial court inordinately focused on the serious nature of the criminal conduct and the message the sentence must send to the community, while only summarily acknowledging Appellant's age and the hallmarks of his age and incredibly suggesting that this sentence does not foreclose some future determination of Appellant's rehabilitative potential?

3. Did the trial court commit an abuse of discretion when it permitted the Commonwealth to present the testimony at sentencing of an expert in "Erie Gang Culture," over defense objection, where Appellant had previously conceded that the gang enhancement applied and the presentation of this testimony was therefore irrelevant, cumulative and/or unduly prejudicial?

Appellant's Br. at 8.

In his first issue, Appellant claims that the trial court abused its discretion by refusing his request to withdraw his guilty plea. *Id.* at 25-34. We review the denial of a motion to withdraw a guilty plea for abuse of discretion. *See Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1291-92 (Pa. 2015). A court abuses its discretion when it "overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019) (citation omitted). As applied to the withdrawal of a guilty plea, a court should administer its discretion "liberally in favor of the

accused," as the waiver of the right to trial is "perhaps the most devastating waiver possible under our Constitution." **Carrasquillo**, 115 A.3d at 1292, 1287.

The Rules of Criminal Procedure provide that "[a]t any time before the imposition of sentence, the [trial] court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty[.]" Pa.R.Crim.P. 591(a).

In this case, we agree with the trial court that Appellant never submitted a valid written or oral motion to withdraw his plea. Trial Ct. Op. at 5. Instead, Appellant's counsel expressly refused to file a motion to withdraw at the hearing. Moreover, Appellant's letter to the trial court does not constitute a valid motion, as he was represented by counsel when he sent it. It is well-established that "*pro se* filings submitted by counseled defendants are generally treated as legal nullities." **Commonwealth v. Williams**, 241 A.3d 353, 355 (Pa. Super. 2020). Accordingly, we conclude that the court did not abuse its discretion in denying relief in the absence of a motion to withdraw.[3]

---

[3] Moreover, even assuming Appellant validly asserted a motion to withdraw, the trial court did not abuse its discretion in denying relief. Notably, a defendant does not have an "absolute right to withdraw a guilty plea" prior to sentencing. **Carrasquillo**, 115 A.3d at 1291. Rather, courts should consider, *inter alia*, "whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." **Id.** at 1292.

In this case, the court explained that it would have denied a properly filed motion because Appellant "never asserted his innocence nor did he
*(Footnote Continued Next Page)*

In his second issue, Appellant challenges the discretionary aspects of his sentence of 55 years to life plus 20 years in prison. Appellant's Br. at 34-41. Challenges to the discretionary aspects of sentence "are not appealable as of right." **Commonwealth v. Leatherby**, 116 A.3d 73, 83 (Pa. Super. 2015). Instead, an appellant must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal; and (4) presenting "a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b)." **Id.** (citation omitted).

---

demonstrate a 'fair and just' reasoning for wanting to withdraw his guilty plea." Trial Ct. Op. at 5 (emphasis omitted). While Appellant may not have expected to plead guilty, he does not refute the court's conclusion that he entered his plea knowingly, voluntarily, and intelligently. **Id.** at 3. Indeed, unlike the case relied upon by Appellant, he does not contend that his counsel "bullied" him into accepting the plea; rather, he admitted at the conclusion of the Rule to Show Cause hearing that he was "still satisfied" with his plea counsel's representation. N.T. Rule to Show Cause Hr'g, at 20; **cf. Commonwealth v. Elia**, 83 A.3d 254, 264 (Pa. Super. 2013) (finding that defendant presented "fair and just reasons for withdrawing his plea" by claiming, *inter alia*, that "plea counsel had 'bullied' him into taking the plea" such that the plea was involuntary). Additionally, unlike the defendant in **Elia** who claimed that there "was insufficient evidence to convict him[,]" Appellant provided no reason for withdrawing his plea other than his unsupported belief that he might have obtained a better outcome at trial. **Elia**, 83 A.3d at 264. Accordingly, Appellant's issue warrants no relief.

As the record demonstrates that Appellant satisfied the first three criteria, we consider whether Appellant raised a substantial question. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Summers*, 245 A.3d 686, 692 (Pa. Super. 2021) (citation omitted). "[A]n allegation that the court considered an impermissible sentencing factor raises a substantial question." *Commonwealth v. Pacheco*, 227 A.3d 358, 376 (Pa. Super. 2020) (finding a substantial question where the sentencing court, *inter alia,* sought to "send a message" and hold the defendant "accountable for the heroin epidemic"). Additionally, an appellant raises a substantial question by asserting that the court "place[d] inordinate focus on the facts of the underlying offense" or "disregarded the defendant's rehabilitation needs." *Commonwealth v. Schroat*, 272 A.3d 523, 527 (Pa. Super. 2022).

In his Pa.R.A.P. 2119(f) statement, Appellant contends that he presented a substantial question. Appellant's Br. at 21-24. Appellant claims that the sentences were "manifestly excessive" when imposed for a crime committed at age 15, where the "court inordinately focused on the serious nature of the criminal conduct and the message the sentence must send to the community, while only summarily acknowledging Appellant's age and the hallmarks of his age and incredibly suggesting that this sentence does not foreclose some future determination of Appellant's rehabilitative potential."

***Id.*** at 23-24. As Appellant claims that the court relied upon impermissible sentencing factors and disregarded his rehabilitative needs, we agree that Appellant has presented a substantial question under ***Pacheco*** and ***Schroat***, ***supra***.

Turning to the merits of Appellant's sentencing challenge, this Court has repeatedly observed that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1263 (Pa. Super. 2012) (citation omitted). To demonstrate an abuse of discretion in regard to sentencing, the defendant must "establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Antidormi***, 84 A.3d 736, 760 (Pa. Super. 2014) (citation omitted).

In devising a sentence, a trial court should consider the following factors: "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Special considerations apply in imposing sentences on juveniles convicted of First-Degree Murder. Specifically, rather than receiving a sentence of death or life without parole as for defendants aged 18 and over, "[a] person who at the time of the commission of [a First-Degree Murder] was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a

- 9 -

term of imprisonment, the minimum of which shall be at least 35 years to life." 18 Pa.C.S. § 1102.1(a)(1). In determining whether to impose life without parole, the court shall consider, *inter alia*, the impact of the offense on the victim and the community, the threat to public safety posed by the defendant, the sentencing guidelines, in addition to the following "age-related characteristics of the defendant[:]" "(i) age[;] (ii) mental capacity[;] (iii) maturity[;] (iv) the degree of criminal sophistication exhibited by the defendant[;] (v) the nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant[;] (vi) probation or institutional reports[;]" as well as other relevant factors. 18 Pa.C.S. § 1102.1(d)(7) (capitalization omitted). Where the Commonwealth does not seek a sentence of life without parole, a sentencing court "may consider" the above-stated factors for guidance when sentencing a juvenile for First-Degree Murder. ***Commonwealth v. Miller***, 275 A.3d 530, 535 (Pa. Super. 2022).

With respect to sentences within the sentencing guidelines, Section 9781(c) instructs that an appellate court should affirm the sentence imposed unless it finds that "the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S. § 9781(c)(2). In reviewing a sentence, we consider the following: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant[;] (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation[;] (3) the findings upon

which the sentence was based[; and] (4) the guidelines promulgated by the commission." *Id.* § 9781(d) (capitalization omitted).

When the sentencing court has the benefit of a pre-sentence investigation report, "we presume that [it] was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors" when imposing the sentence. *Commonwealth v. Sexton*, 222 A.3d 405, 422 (Pa. Super. 2019) (citation omitted). "As long as the trial court's reasons demonstrate that it weighed the [guidelines] with the facts of the crime and the defendant's character in a meaningful fashion, the court's sentence should not be disturbed." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018-19 (Pa. Super. 2003) (citation omitted).

Appellant argues that the sentencing court abused its discretion in imposing a sentence of 50 years to life in prison for Murder and a consecutive sentence of 5 to 20 years for Aggravated Assault, resulting in what he contends is "a manifestly excessive term of 55 years to life plus 20 years imprisonment." Appellant's Br. at 34. He acknowledges that the minimum sentence for First-Degree Murder committed by a 15-year-old is 35 years to life in prison and that his sentences fall within the standard guideline ranges. *Id.* at 21-23 (citing 18 Pa.C.S. § 1102.1(a)(1)).

Appellant asserts that the court focused inordinately "on the seriousness of the crime perpetrated in this case and the message that Appellant's sentence must send to the community to deter further violence." *Id.* at 39. Appellant further contends that the court "afford[ed] no meaningful

consideration to Appellant's age and the hallmarks of his youth" or to Appellant's mental health evaluation which indicated that he "could be rehabilitated due to the fact that he is very young and does not appear to have a tremendous amount of anger or animosity." *Id.* at 39-40 (citation omitted). In addition, Appellant argues that his sentence is the "functional equivalent" of a sentence of life without the possibility of parole, as he would not be eligible for parole until he "reaches his mid to late 70s[.]"[4] *Id.* at 40.

Upon careful review, we find no basis for relief. The court provided extensive reasoning in support of the sentence, including its consideration of Appellant's "pre-sentence investigative [] report, sentencing guidelines, character letters [and statements], [and] the rehabilitative needs of Appellant." Trial Ct. Op. at 7. The court additionally recognized the sentencing factors relevant to juvenile murder convictions. *Id.* at 7-8. While acknowledging Appellant's potential "capacity to change," the court opined that this murder was "as egregious and heinous and troubling as it gets[.]" *Id.* at 8. The court emphasized the sophistication of Appellant's "planning and premeditation[,]" highlighting that this was not a case where Appellant "succumbed to peer pressure in an act that was spontaneous" but instead that Appellant "acted like a leader in this case." *Id.* at 8-9. While acknowledging the still-developing nature of juveniles, the court emphasized that Appellant "showed the maturity of a calculating adult[.]" *Id.* at 9. The court also

---

[4] The court imposed the instant sentence consecutively to a separate sentence of 3½ to 7 years of incarceration at Docket Number 1104-2022. *Id.*

observed that Appellant was involved in a separate shooting when he was 17. *Id.* The court emphasized the devastating effect on the family and community of the 13-year-old victim. *Id.* at 9. The court concluded its reasoning by noting the "cost" to the community, opining that "this has to stop." *Id.* at 10.

After careful review, we determine that the court, while seeking to send a message to the community, additionally provided an extensive, individualized assessment of the relevant Section 9721(b) sentencing factors and the Section 1102.1 factors related to juvenile murders. This Court has not found a sentencing court's mere reference to a desire to "send a message" to the community to undermine an otherwise valid sentence. *See Pacheco*, 227 A.3d at 375, 377 (affirming a judgment of sentence where the sentencing court "considered the individual characteristics of Pacheco[,]" while stating its intent to "to send a message that severely harsh sentences will be imposed for drug mules"). Accordingly, as the court explained its reasons for imposing the standard-range sentences, we conclude that the court did not abuse its discretion in imposing the sentence. *See Miller*, 275 A.3d at 536 (rejecting defendant's claim that a sentence of 55 years to life in prison is manifestly unreasonable and emphasizing that it is "solely within the province of the sentencing court to weigh the evidence and balance the sentencing factors").

In his final issue, Appellant contends that the court abused its discretion in permitting expert testimony regarding Erie gang culture during the sentencing hearing. Appellant's Br. at 41-45. The admissibility of evidence during a sentencing hearing "rests with the sound discretion" of the sentencing

court. **Commonwealth v. King**, 182 A.3d 449, 455 (Pa. Super. 2018) (citation omitted). "[A] sentencing court may consider any evidence it deems relevant. While due process applies, the sentencing court is neither bound by the same rules of evidence nor criminal procedure as it is in a criminal trial." **Id.**

Appellant argues that the expert testimony regarding Erie's gang culture "lacked relevance" because he had previously agreed to the application of the criminal gang enhancement,[5] "conced[ing that] the gang was the catalyst for the shooting and/or was the motivational factor of the killing." Appellant's Br. at 42, 43. Appellant claims that his subsequent denial of gang involvement during his mental health evaluation did not alter the analysis because "Appellant was legally bound by the terms of his plea agreement, including the applicability of the gang enhancement." **Id.** at 43 In essence, he asserts that his stipulation to the gang enhancement obviated the Commonwealth's burden to demonstrate gang affiliation. **Id.** at 44.

Alternatively, Appellant argues that "the relevancy of any of [the expert] testimony was outweighed by the danger for unfair prejudice." **Id.** at 44. Appellant contends that the officer's in-depth description of the two rival gangs "effectively served to sully Appellant with all of the activities of these groups and their members, when he stood for sentencing on four discrete charges."

---

[5] "The Criminal Gang Enhancement adds 12 months to the lower limit and adds 12 months to the upper limit of the standard range." 204 Pa. Code § 303.10(c)(4); **see also** 42 Pa.C.S. § 9720.4.

*Id.* Appellant continues that the officer "derived this information from sources that would not withstand basic due process and confrontation clause challenges — including challenges to authenticity and hearsay." *Id.* Finally, Appellant contends that the expert's testimony was cumulative. *Id.* at 45.

In rejecting Appellant's claim, the sentencing court explained that the testimony was relevant because Appellant's involvement in the gang was "the central motive to the shooting[,]" despite Appellant's attempts to "minimize his role in the gang" during his mental health evaluation and his allocution. Trial Ct. Op. at 11. The court opined that the testimony was "not unduly prejudicial because it supported the gang sentencing enhancement[.]" *Id.* The court additionally opined that "[e]ven if the [a]ppellate [c]ourt finds the [t]rial [c]ourt erred in allowing the testimony, the error was harmless[,] and Appellant was not unduly prejudiced." *Id.*

After careful review, we conclude that the sentencing court did not abuse its discretion in admitting expert testimony regarding Erie's gang culture because the gangs were the central motive in the shooting and Appellant equivocated on his role in the gang. Additionally, we defer to the court's assessment of whether the evidence was cumulative as the court had overseen the case through the relevant proceedings. Accordingly, we reject Appellant's challenge to the admission of the expert testimony.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/26/2026